APOLLINARIS Co., Limited, *v.* SCHERER.

*(Circuit Court, S. D. New York. March 16, 1886.)*

TRADE-MARK—INFRINGEMENT—CONTRACT FOR EXCLUSIVE RIGHT TO SELL "HUNYADI JANOS" WATER—PURCHASE FROM PARTIES TO WHOM OWNER RIGHTFULLY SOLD—RESELLING.

The owner of a spring of mineral water in Hungary entered into a contract with complainant giving him the exclusive right to export and sell the water under its name of "Hunyadi Janos," which he had adopted as a trade-mark, in Great Britain and America. Defendant applied to the owner to purchase the bottled water, but was refused, and purchased it from those to whom it had been sold in Germany, and sold it in the United States in bottles with the same label as that used by complainant, except that defendant's bottles, like all those sold by the owner, were stamped with the words, "CAUTION. This bottle is not intended for export, and if exported for sale in * * * America * * * the public is cautioned against purchasing it," while complainant's bottles were stamped "Sole exporters." *Held,* that complainant was not entitled to an injunction to restrain defendant from selling the water.

In Equity.

*Roscoe Conkling* and *Henry Melville,* for complainant.

*Wayne MacVeagh* and *Emile Beneville,* for defendant.

WALLACE, **J.** The complainant has applied for an injunction *pendente lite* to restrain the defendant from importing into the United States or selling here any water under the name or designation "Hunyadi Janos," or offering to sell any water in bottles with that name upon them, or with labels like those adopted and used by the complainant to designate and distinguish the water from other mineral waters. The defendant is importing and selling here the water of a certain mineral spring of Hungary owned by one Andreas Saxlehner. The waters are known as "Hunyadi Janos," the spring having been christened by that name by Saxlehner, and the name as applied to the water having been adopted by him as a trade-mark. Prior to the time of the acts complained of Saxlehner transferred to the complainant the sole right to export the waters from Hungary to Great Britain and America, and to sell them in these countries and to use the trade-mark. For the more effectual protection of their respective rights Saxlehner and the complainant adopted labels to be affixed to the bottles of water to be sold by each bearing the name "Hunyadi Janos" and other distinguishing devices. The labels used by Saxlehner contained the following printed notice:

"CAUTION. This bottle is not intended for export, and if exported for sale in Great Britain, her colonies, America, or other transmarine places, the public is cautioned against purchasing it. ANDREAS SAXLEHNER."

The labels used by the complainant contained in the place of this notice the following:

"Sole exporters. The Apollinaris Company, Limited, London."

Thereafter all water sold by Saxlehner to purchasers in Germany and other parts of continental Europe was sold in bottles with the label which had been adopted for him, and all the water sold by the complainant in Great Britain and the United States was sold in bottles with the label adopted for its use.

The complainant established an agency for the sale of the water in this country, but, as it now asserts, is unable to maintain its own prices for the article because the defendant purchases the water in Germany from persons to whom it has been sold by Saxlehner, imports it, and sells it here at lower prices. It is shown that the defendant purchases the water in bottles under the label adopted by Saxlehner containing the cautionary notice, and that he does this after having applied to Saxlehner to sell him the water and been refused and informed by Saxlehner of the complainant's rights.

The bill of complaint proceeds in part upon the theory that the defendant is infringing the complainant's trade-mark in the name and label applied to the water, but all the averments in this behalf may be disregarded as irrelevant to the real question in the case. No doubt is entertained that the name when applied to the water is a valid trade-mark, and that the complainant should be protected against the unauthorized use of the trade-mark by another. The complain-

ant would be entitled to this protection entirely irrespective of the registration of its trade-mark in the patent-office. The same observations apply to the use of the label. The complainant has a common-law right to the name and the label as a trade-mark by which its mineral waters are identified; and as the necessary diversity of citizenship exists between the parties to confer jurisdiction upon this court, the only effect of registration is to afford and perpetuate the evidence of the complainant's title. But the defendant is selling the genuine water, and therefore the trade-mark is not infringed. There is no exclusive right to the use of a name or symbol or emblematic device except to denote the authenticity of the article with which it has become identified by association. The name has no office except to vouch for the genuineness of the thing which it distinguishes from all counterfeits; and until it is sought to be used as a false token to denote that the product or commodity to which it is applied is the product or commodity which it properly authenticates, the law of trade-mark cannot be invoked.

The real question in the case is whether the defendant is unlawfully interfering with any exclusive right of the complainant to control the sale of the water in the territory ceded to the complainant for that purpose by Saxlehner. It is manifest that the acts of the defendant tend to deprive the complainant of the substantial advantages which it expected to obtain from the privilege transferred to it by Saxlehner. It can no longer maintain its own prices for the mineral water, or hold out the inducements it formerly could to the agents it has selected to introduce the article to the patronage of the public, and build up a trade. It can no longer protect itself as efficiently against the chances of a spurious article being palmed off upon the public as its own. It is therefore measurably deprived by the acts of the defendant of the profits and benefits which it contemplated when it purchased from Saxlehner the exclusive right of importing the water into this country and selling it here. If the complainant could acquire an exclusive right to sell the water here the case would be plain. If it could not, it still remains to consider whether the defendant has violated any duty which the law recognizes in his relations to the transaction. There would seem to be no doubt that the agreement between Saxlehner and the complainant was a valid one. He had the right to dispose of his property in the product of his spring as he saw fit, and it is not apparent how the transfer of a part of his exclusive right to vend the water, by which a territorial division in its enjoyment was created, can be deemed obnoxious to any principle of public policy as tending to create a monopoly or an unlawful restraint of trade. If Saxlehner were now endeavoring to compete with the complainant in the sale of the water in the ceded territory, his conduct would furnish a ground for equitable jurisdiction and the remedy of an injunction because of the inadequacy of a remedy at law. Bisp. Eq. 463. It is equally clear that if the defendant were co-

operating with Saxlehner collusively to violate the complainant's right to the exclusive sale of the water he also would be restrained. In such a case the foundation of equitable redress would be the breach of covenant on the part of Saxlehner, and the defendant when acting in aid would be identified with Saxlehner and amenable to the remedy as though he were Saxlehner himself. But it is important to bear in mind that the case would be one for equitable cognizance, and the remedy of an injunction merely upon the ground that the complainant's damages arising from the breach of covenant could not be reparably redressed at law.

It was not possible by any contract or grant between Saxlehner and the complainant to create a territorial title to the products of the spring; no such title is known to the law of personal property. No analogy can be drawn from the law of patents for inventions, because the title to this species of property is purely statutory; and it is by force of arbitrary law alone that the title in the incorporeal property can be subdivided into territorial parts. The decisions which have been relied on in argument as sustaining the right of the owner of a patent to prevent a sale or use of the patented thing outside of the territorial limits for which a license has been granted, although the license authorized a sale and the sale was made within the territorial limits of the license, have therefore no application to the present case. The rights of the complainant rest purely in covenant. If Saxlehner himself should sell the water here the purchaser would acquire title to the article with all the rights of a proprietor to use it or to do with it as he might see fit. Suppose the purchaser should be fully aware at the time of buying that Saxlehner had covenanted with the complainant that the latter alone should have the privilege of selling the water here, could it be seriously questioned that the purchaser would nevertheless acquire a perfect title? Although the defendant was fully aware when he bought the water which he has imported from those to whom Saxlehner had sold it of the terms of the agreement between Saxlehner and the complainant, that circumstance does not help the complainant's case. There was no breach of covenant on the part of Saxlehner; on the contrary, he did all that was in his power to carry out the agreement between himself and the complainant. The defendant did not expressly or impliedly assume not to sell the water within the territory ceded to the complainant; on the contrary, he repudiated any recognition of such an obligation. The insuperable difficulty in the way of the complainant is that any purchaser of the water, wherever he purchases it, acquires a valid title to treat it as his own property.

Upon first impression it would seem that the defendant cannot be justified in a course of conduct which is calculated if not deliberately prompted by the design to deprive the complainant of the benefit of its contract with Saxlehner, and that there must be some principle of equity which can be invoked to prevent him from doing that which

Saxlehner himself would not be permitted to do. The interposition of a court of equity is frequently invoked and always successfully to restrain unlawful competition in trade. All practices between rivals in business which tend to engender unfair competition are odious and will be suppressed by injunction. *Croft* v. *Day*, 7 Beav. 84; *Harper* v. *Pearson*, 3 Law T. (N. S.) 547; *Stevens* v. *Paine*, 18 Law T. (N. S.) 600; *Glenny* v. *Smith*, 11 Jur. (N. S.) 964; *Mack* v. *Petter*, 41 Law J. Ch. 781; *Burgess* v. *Burgess*, 3 De Gex, M. & G. 896; *Glen & H. Manuf'g Co.* v. *Hall*, 61 N. Y. 226; *Goodyear Rubber Co.* v. *Goodyear's Manuf'g Co.*, 21 Fed. Rep. 276; *Genin* v. *Chadsey*, 2 Brewst. 330; *Avery* v. *Meikle*, 17 West. Jur. 292; *Bell* v. *Locke*, 8 Paige, 75. But the adjudications which illustrate the principle rest upon the ground that a merchant or trader is entitled to protection only against dishonest or perfidious rivalry in his business. He will be protected against the fraudulent or deceitful simulations by a competitor of tokens which tend to confuse the identity or business of the one with the other, and against the false representation of facts which tend to mislead the public and divert custom from the one to the other. Anything short of this, however, is lawful competition. Accordingly the courts will not attempt to prevent the sending of circulars or advertisements by one to the customers of a competitor in business although designed to alienate patronage, if they contain no deceitful or misleading statements.

The law does not deal with motives which are not accompanied by a wrongful overt act. If the defendant is legally justified in buying where he can and selling as he chooses, it is not material whether he is actuated by a desire to annoy the complainant or to promote his own pecuniary interests.

The complainant is without remedy and the motion for an injunction must be denied.