RUSSIA CEMENT CO. v. FRAUENHAR et al.

(Circuit Court of Appeals, Second Circuit.   October 19, 1904.)

No. 204.

1. UNFAIR COMPETITION—USE OF TRADE-NAME.

Complainant manufactured glue of different grades, which it sold under the trade-name of "Le Page." Defendants purchased certain of such glue in bulk, and bottled and sold it under the name of "Le Page's Glue," with a statement that it was manufactured by complainant and bottled by defendants. *Held*, that such use of the name by defendants was not fraudulent, and did not constitute unfair competition.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 126 Fed. 228.

This cause comes here on appeal from a decree of the United States Circuit Court for the Southern District of New York dismissing bill filed to restrain defendants' use of complainant's trade-name "Le Page" on glue sold by defendants, and for an injunction and accounting.

John Dane, Jr., for appellant.
Ralph Nathan, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge.   On the argument of this appeal complainant's counsel contended that it applied the name of "Le Page's" only "to a special, superior brand of glue"; that its inferior manufactures of glue are not known as "Le Page's Glue," but are otherwise designated; and that "the so-called 'Le Page's Fish Glue' and 'Le Page's Liquid Glue,' put up, labeled, advertised, and sold by defendants as products made and sold by complainant under those names, are spurious, and not genuine, and of qualities and made of materials greatly inferior to any made by the Russia Cement Company, to which the trade-name 'Le Page's' has ever been applied by complainant." Unfortunate-

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

ly for complainant, the facts in the case do not support its contention. Upon the factory of complainant at Gloucester, Mass., is painted in large letters the following:

LE PAGE'S LIQUID GLUE.
RUSSIA CEMENT CO.
NEW YORK OFFICE 84 READE ST.
LE PAGE'S LIQUID FISH GLUES.

Its bill heads, circulars, and other printed matter advertise its products generally as "Le Page's Glues," "Le Page's Fish Glues," and "Le Page's Liquid Fish Glues," indiscriminately, and without reference to any other kind or qualities of glue, and its president has testified that "in all cases of the sale of Le Page's Glue in bulk there have been some other marks attached or used in connection with the word 'Le Page'; as, for instance, 'Le Page's Glue No. 12,' 'Le Page's Glue No. 653,'" and that "we manufacture several grades of glue to which the word 'Le Page' has been applied." That the defendants originally bought their glue from complainant under the name "Le Page," and notified it that they purchased it for the express purpose of bottling, appears from the testimony of defendant Frauenhar and the following letter:

"Gentlemen: We accept your offer of 4th inst. for Le Page liquid fish glue. In accordance with which please send at once one barrel each 653 F. H. and 692 F. H. and one barrel thinned down for filling bottles, this we presume will be at a lower price.

"Yours, Columbia Wax Works. L. E. K.
"P. S. Can you favor us with the addresses of a good bottle dealer as we are not yet posted. C. W. W. L. E. K."

Each of the barrels sent by complainant in response to this order was marked with the name "Le Page."

Complainant subsequently refused to sell its glue to defendants, and they purchased it from a third party, who obtained it from complainant, generally under the name of "fish glue," but sometimes coupled with the word "Le Page's," and sometimes further designated as "Liquid" or "Fish," with or without a qualifying number. The defendants put the glue thus made and sold by complainant into bottles with labels bearing no similarity to those of complainant, and which read as follows:

"Le Page's Fish Glue, Manufactured by Russia Cement Company, Gloucester, Mass. Bottled by Columbia Wax Works, New York."

In these circumstances we are unable to discover any ground on which complainant is entitled to the interposition of a court of equity on its behalf. The complainant originally denied defendants' right to the use of the word "Le Page" on a theory stated by it as follows:

"The dealer who handles trade-marked goods can sell them only in the original package just as it came from the manufacturer. If he has bought such goods in a large package, he has no right to affix such trade-mark to other packages, and transfer the goods thereto. Even though the statement made on the labels should all be true, as a matter of fact it is unlawful for such use to be made of a trade-mark. In other words, if you have purchased large packages of Le Page's Glue, made by the Russia Cement Company, and want to sell it in smaller packages, you have no right to use either the word 'Le Page' or the name of the Russia Cement Company on any of the labels that you may affix to such packages."

This contention appears to have been abandoned. The position of complainant on this appeal appears from the following assignment of error:

"That the court below erred in conceding that plaintiff 'uses this trade-name ("Le Page's") only. upon higher grades of glue,' and at the same time admitting that defendants use the name on lower grades of glue procured from plaintiff, and, notwithstanding these facts, without granting complainant any relief, nor the public any protection against such fraudulent methods, dismissed the bill of complaint."

Counsel for complainant argues that defendants should be enjoined from applying the name "Le Page" to a glue made by complainant, which is inferior to the most expensive brands sold by complainant under that name, on the ground that this is a gross fraud and an imposition upon the public. How such conduct constitutes a fraud upon the public does not appear from the evidence. The labels on defendants' bottles contain no statement as to whether the glue put up by it is either of a superior or inferior quality, but merely that this glue is manufactured by complainant and is bottled by defendants, and that "this glue is known all over the world as the best for cementing wood, leather, glass," etc. If the public gets an inferior quality of glue when it purchases that bottled by defendants, it is because the complainant has seen fit to sell such glue under the same trade-name as it had applied to a superior article, and has chosen thus to reap the profit from the sale to the public of two qualities or grades of the same article under the same trade-name. A court of equity will not enjoin a person from affixing to goods sold by him their true name and description, in the absence of any evidence of an attempted fraud, such as by representing his goods as of a different origin or quality or manufacture from what they actually are. The case of Gillott v. Kettle, 3 Duer, 624, cited by complainant as "very close in point," illustrates the rule and its application. There the defendant removed the labels from an inferior quality of pens manufactured by complainant, and affixed other labels which imitated the labels on a superior quality of pens made by complainant. The court held that "by such a practice the defendant endeavors by a false representation to effect a dishonest purpose; he commits a fraud upon the public and upon the manufacturer." But here there is no false representation by spurious label or false statement. The label tells the truth, and nothing but the truth. There is no fraud upon the public, for it gets the genuine, identical thing described by the label (Apollinaris Co. v. Scherer [C. C.] 27 Fed. 18); there is no fraud upon the manufacturer, for its vendees resell its manufacture, to which it has applied its name (Vitascope Co. v. United States Phonograph Co. [C. C.] 83 Fed. 30), coupled with the statement that it (the vendee) is responsible for the bottling of the manufacture.

The decree is affirmed, with costs.