WERTHEIMER et al. v. BATCHELLER IMPORTING CO.

(Circuit Court, S. D. New York. April 7, 1911.)

1. TRADE-MARKS AND TRADE-NAMES (§ 9*)—"JAVA."

The word "Java," though geographical, having acquired a secondary meaning by its use in connection with face powders, was entitled to protection as used in the phrase "Poudre de Riz de Java," indicating a variety of perfumed face powder.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 13; Dec. Dig. § 9.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 9*)—DESIGNATION OF ARTICLE—CONSTRUCTION—INTENT.

The phrase "Poudre de Riz de Java," used by complainant to indicate a variety of perfumed face powder, did not import a statement that the rice used in the powder was grown in Java.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 9.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 95*)—INFRINGEMENT—SIMULATION—INJUNCTION.

Complainant compounded and sold a perfumed face powder under the phrase "Poudre de Riz de Java," and defendant advertised and sold a similar powder in a similar package under a label "Javarice Powder," and also used the words "Poudre de Riz de Java" on packages and in advertisements. Held, that complainant was entitled to a preliminary injunction against the use of the name "Poudre de Riz de Java," but that such injunction would not prevent defendant from calling its product "Rice Powder" or "Poudre de Riz," nor from adding to the name a statement that its product contained powder made from rice grown on the island of Java, provided such statement was accurate and so arranged typographically that the word "Java" was not given such a degree of prominence as would be calculated to cause confusion between the packages of complainant and defendant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*]

In Equity. Bill by Ernest Wertheimer and another against the Batcheller Importing Company. On motion for preliminary injunction. Granted.

Briesen & Knauth, for complainants.
Chas. C. Gill, for defendant.

LACOMBE, Circuit Judge. Although the word "Java" is a geographical name, the evidence shows that for very many years it has, when used in connection with the words "Poudre de Riz," acquired a secondary meaning as indicating a variety of perfumed face powder compounded and sold by complainant. The phrase "Poudre de Riz de Java" is apparently no more a statement that the rice used in it was grown on the island of Java than the use of the phrase "Eau de Cologne" imports that the liquid perfume thus designated was made at Köln am Rhein. The court is not persuaded to believe that defendant labeled its product "Javarice Powder" on any theory that powder of rice grown on that island would commend itself to purchasers as peculiarly adapted for use as a face powder. It chose that title because the purchasing public, or a large part of it, would suppose it was buy-

ing the same article it had bought for many years, and which it evidently approved of, as large sales testify. For the same reason defendant adopted a style of package, which manifestly, despite differences, exhibits sufficient resemblances to complainants' well-known package to induce a belief that it is the same.

Complainants may take an order for preliminary injunction against the use of the name "Poudre de Riz de Java" on packages or in advertisements. But such injunction shall not be so construed as to prevent defendant from calling its product "Rice Powder" or "Poudre de Riz" (which seems to have become a generic name for face powders), nor to prevent defendant from adding to the name the statement that their product contains powder made from rice which was grown in the island of Java, provided such statement is accurate and is so arranged typographically in relation to the rest of the label that the word "Java" be not given a degree of prominence which would be calculated to cause confusion between the packages of complainants and defendant.

It is difficult to indicate what precise changes should be made in the packages which now resemble complainants' so closely as to be likely to confuse the purchasing consumer. Many things, size, shape, color, type, decoration, etc., combine to make up any distinctive package. All need not be altered. Sometimes a change in a single respect will be sufficient sharply to indicate a difference. There is rarely any difficulty, none is apparent here, about devising a package for new goods which will be attractive and distinctive of the new goods, and yet in no way likely to mislead. The real difficulty is that in most cases the designer is solicitous not to mark his goods so that their packages shall be unlike all others, but to get away from some earlier package which is well and favorably known only just so far as the court will make him go. All that can be done now is to enjoin the present form of package, whether the side covering be green or blue. When some other and different form of package is brought to the court's attention, it can be considered on its merits, or its demerits, as the case may be.

Operation of the injunction will be suspended for 30 days after service to give defendant opportunity to change the labels.