## COCA-COLA CO. v. BENNETT et al.

### (District Court, D. Kansas, Second Division. March 5, 1915.)

### No. 12-N.

1. TRADE-MARKS AND TRADE-NAMES ☞53—INFRINGEMENT—SUIT FOR INJUNCTION.

A trade-mark is not infringed by its use on the very article for which it was designed, although by another than the registered owner, and such use will not be enjoined by a court of equity for the protection of an attempted monopoly of an unpatented article through exclusive contracts for its sale.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 61; Dec. Dig. ☞53.]

2. MONOPOLIES ☞21—RIGHT—SUIT FOR INFRINGEMENT—INJUNCTION.

Complainant's trade-mark "Coca-Cola" covers a beverage, and also the syrup by the use of which the beverage is made. Complainant, through an authorized agent, sold quantities of the syrup to defendants to be used in making the beverage, which defendants bottled and sold under complainant's trade-mark. Later complainant established an agency of its own to make and sell the beverage in the same territory, and not only refused to make further sales of syrup to defendants, but brought suit to enjoin them from alleged infringement of its trade-mark by using it on their product made from the syrup previously purchased. Held, that such use was not an infringement, and that, the evident purpose of the suit being only to aid complainant in monopolizing the sale of the beverage, to which it had no equitable right under the facts shown, an injunction would not be granted.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig. ☞21.]

In Equity. Suit by the Coca-Cola Company against Charles G. Bennett and others. On final hearing. Decree for defendants.

Holmes, Yankey & Holmes, of Wichita, Kan., for plaintiff.
C. M. Williams, of Hutchinson, Kan., for defendants.

POLLOCK, District Judge. This is a suit to restrain infringement of trade-mark. The facts stipulated by the parties, necessary to decision, may be briefly summarized as follows:

Plaintiff is a corporate citizen of the state of Georgia, engaged in the business of manufacturing and selling a syrup product by it sold under its trade-mark or trade-name, "Coca-Cola." This entire syrup product manufactured by plaintiff is sold through two bottling corporations of the state of Tennessee, named The Coca-Cola Bottling

Company and Coca-Cola Bottling Company, under exclusive contracts made between the parties. With the consent of the parties said Tennessee corporations divided the territory of this country between themselves and other corporations formed, of which one is the Western Coca-Cola Company, a corporate citizen of the state of Illinois, located in the city of Chicago. After the formation of said Illinois corporation, plaintiff entered into a contract to supply said company with its syrup product to be resold in certain designated territory, including this state. Defendants Bennett, under the firm name of The Bennett Mineral & Distilled Water Company, doing business at the city of Hutchinson, this state, prior to January 1, 1913, purchased from the Western Coca-Cola Company; and employed the same in preparing, bottling, and selling the beverage coca-cola in bottles having crowns and corks bearing the trade-name of plaintiff, "Coca-Cola." On said date the Western Coca-Cola Company established an agency for bottling and selling of its completed product as a beverage in the city of Hutchinson, and thereafter would no longer sell to defendants; on the contrary, insisted defendants should sell to said company all its syrup products, crowns, and caps theretofore purchased, and cease doing business under the trade-name "Coca-Cola." This defendants refused to do, and at the time this suit was instituted defendants were engaged in bottling and selling coca-cola as a beverage manufactured from the syrup which theretofore they had purchased from Western Coca-Cola Company, and were so transacting such business when this suit to restrain infringement of trade-mark or trade-name was instituted.

The question here presented concerns itself solely with the right of plaintiff to the injunctive relief prayed. It is seen from the statement there arises in this case no question of the right of plaintiff to protect its business against unfair competition in the palming off by defendants of a spurious or inferior article for the goods manufactured from plaintiff's product, and no contention is made but that the product defendants were bottling and selling as a beverage under the trade-name of "Coca-Cola" when this suit was instituted was made from syrup manufactured by plaintiff for that purpose, and sold and delivered to them by authority of plaintiff. The only question at issue in this case under the pleadings and proofs concerns itself with the right of plaintiff to injunctive relief, restraining defendants from the manufacturing, bottling, and sale of coca-cola as a beverage under the trade-mark of plaintiff; said beverage being manufactured by defendants from syrup made by plaintiff for such purpose, and by defendants having been purchased from plaintiff, or its agent, for this purpose, this being done by defendants after the Western Coca-Cola Company had established an agency for such purpose in the city of Hutchinson, and had refused longer to sell the syrup product of plaintiff to defendants, or to longer license them to use the trade-mark of plaintiff.

The right of plaintiff to the injunctive relief prayed is denied by defendants on two grounds: First, because the syrup product from which the completed beverage by them being made, bottled, and sold under the trade-mark of plaintiff had for value been purchased in

good faith by defendants from plaintiff for the identical use and purpose to which it was being put; second, because the exclusive contracts employed by plaintiff and its agents under which its coca-cola business is conducted are in violation of the anti-trust laws of the state and nation. It appears the trade-mark of plaintiff, as registered January 31, 1893, provides as follows:

"The class of merchandise to which this trade-mark is appropriated is beverages, and the particular goods comprised in such class on which it is used by said company is nutrient or tonic beverages."

Under its trade-mark, registered October 31, 1905, it is provided:

"The class of merchandise to which this trade-mark is appropriated is beverages, and the particular description of goods comprised in said class upon which this trade-mark is used is tonic beverages and syrups for the manufacture of such beverages."

It is thus seen the registered trade-mark of plaintiff covers both the syrup product by it manufactured, from which the completed beverage is produced, and also the beverage known as coca-cola in its completed form. From this viewpoint it is argued by plaintiff, although defendants may have purchased from plaintiff or its accredited representative the syrup product from which that beverage is made, yet, as its trade-mark covers the completed beverage itself, defendants may not, without license or authority from plaintiff, make, bottle, and vend the beverage under the trade-mark of the plaintiff.

[1] It has been held the sale of merchandise in bulk by a manufacturer does not justify the vendee in using on his retail packages the labels which the manufacturer uses upon the same merchandise only when prepared by himself on smaller packages for the retail trade. Krauss v. Jos. R. Peebles' Sons Co. (C. C.) 58 Fed. 585. However this may be in cases where applicable, such are not the facts of the present case. Under the stipulated facts in the case at bar the syrup product employed by defendants in the use sought to be restrained was purchased from plaintiff, or its agents, to be employed in the very use now sought to be restrained; that is to say, the right to the relief sought is not predicated by plaintiff on the ground defendant could not have employed the syrup in the very manner now sought to be restrained when purchased, but, on the contrary, by lapse of time, that arrangements have been made with another, and defendants may not employ that which they had theretofore purchased for use. In other words, the very purpose of the suit is to protect plaintiff in the monopoly made by its exclusive contracts, and not to protect its trade-mark goods from competition with spurious or inferior products. Hesseltine, in his work on the Law of Trade-Marks, p. 112, says:

"Relief for infringement is afforded upon the ground that it is a fraud to use another's trade-mark, and thus pass off different goods as and for the goods of the proprietor of the trade-mark, rather than upon the ground of property in the mark itself. The essence of the wrong consists in the sale of the goods of owner, manufacturer, or dealer as and for those of another by means of such trade-mark. It is only where this false representation is directly or impliedly made that relief can be granted in equity."

In Russia Cement Co. v. Frauenhar, 133 Fed. 518, 66 C. C. A. 500, the Circuit Court of Appeals for the Second Circuit said:

"A court of equity will not enjoin a person from affixing to goods sold by him their true name and description, in the absence of any evidence of an attempted fraud, such as by representing his goods as of a different origin or quality or manufacture from what they actually are."

In Apollinaris Co. v. Scherer (C. C.) 27 Fed. 18, it is said:

"But the defendant is selling the genuine water, and therefore the trademark is not infringed. There is no exclusive right to the use of a name or symbol or emblematic device, except to denote the authenticity of the article with which it has become identified by association. The name has no office, except to vouch for the genuineness of the thing which it distinguishes from all counterfeits; and until it is sought to be used as a false token, to denote that the product or commodity to which it is applied is the product or commodity which it properly authenticates, the law of trade-mark cannot be invoked."

[2] It follows the plaintiff is not entitled to the injunctive relief prayed to restrain defendants from using the syrup product made by plaintiff in the identical manner contemplated by the parties at the time it was acquired by defendants. Not alone is this true, but, as has been seen, the real purpose of this suit, as shown from the record, is not to protect the trade-mark of plaintiff from infringement by defendants in palming off on the public their spurious or inferior goods under the trade-mark, and in the place of the beverage coca-cola as made from the syrup of plaintiff, to the consequent injury and damage of plaintiff; but the purpose is to secure the protection of the law to enforce and carry out the monopoly it has planned and enjoys in the manufacture and sale of nonpatented personal property through the medium of the exclusive contract system, under the guise of affording protection to its registered trade-marks. That the adoption, use in business, or registration of a trade-mark has no relation to and cannot be employed as a substitute for a patented invention in the creation or maintenance of a monopoly, as may be had in a patented article, is quite apparent. In Apollinaris Co. v. Scherer, supra, it is said:

"It was not possible by any contract or grant between Saxlehner and the complainant to create a territorial title to the products of the spring; no such title is known to the law of personal property. No analogy can be drawn from the law of patents for inventions, because the title to this species of property is purely statutory; and it is by force of arbitrary law alone that the title in the incorporeal property can be subdivided into territorial parts. The decisions which have been relied on in argument as sustaining the right of the owner of a patent to prevent a sale or use of the patented thing outside of the territorial limits for which a license has been granted, although the license authorized a sale and the sale was made within the territorial limits of the license, have therefore no application to the present case."

Such being found to be the object, scope, and purpose of the present suit, to my mind, brings it within the condemnation of the anti-trust laws of the state and the nation, and on this ground also the injunctive relief prayed must be denied. Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502; Cont. Wall Paper Co. v. Voight & Sons Co., 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486.

It follows the petition must be dismissed for want of equity. It is so ordered.