### FRED GRETSCH MFG. CO. v. SCHOENING et al.

(Circuit Court of Appeals, Second Circuit. December 12, 1916.)

#### No. 55.

Customs Duties ⬚⟿22—Prohibition of Importation—Goods Which "Copy or Simulate" Registered Trade-Mark.

The object of Act Feb. 20, 1905, c. 592, § 27, 33 Stat. 730 (Comp. St. 1913, § 9513), prohibiting the entry of imported merchandise which shall "copy or simulate" a trade-mark registered under it, is to protect the public against spurious goods identified by trade-mark as genuine, and does not protect the owner of a registered trade-mark against the importation by third persons of the genuine article under that trade-mark.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 18; Dec. Dig. ⬚⟿22.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Fred Gretsch Manufacturing Company against Michael E. Schoening and another. From an adverse order, defendants appeal. Affirmed.

Kenyon & Kenyon, of New York City, for appellant Schoening.

H. Snowden Marshall, U. S. Atty., of New York City, for appellant Malone.

Isaac B. Owens, of New York City, for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is an appeal from an order of Judge Hough granting a preliminary injunction requiring the defendant Schoening to withdraw his notice of ownership of the trade-mark "Eternelle" filed with the Department of the Treasury under section 27 of the Act of February 20, 1905, so far as it applies to violin strings manufactured under that name by C. A. Mueller in Germany, and enjoining the defendant Malone, collector of the Port of New York, from longer detaining the violin strings manufactured by Mueller under the name "Eternelle," consigned to the complainant, and requiring him to deliver the same to the complainant.

It appears that for many years past C. A. Mueller of Unterwiesenthal, Saxony, Germany, has manufactured and sold violin strings identified by the trade-mark "Eternelle." Defendant Schoening manufac-

tures no strings, but has the exclusive agency for the sale of Mueller's strings in the United States, and on or about July 14, 1908, with Mueller's approval, registered the word "Eternelle" as a trade-mark belonging to him in the United States Patent Office, which registration he filed with the Department of the Treasury.

July 7, 1915, the complainant purchased a package of Mueller's genuine "Eternelle" violin strings in Germany, which are the strings consigned to him now in the possession of the defendant Malone and which he as collector of the port refuses to permit to be entered.

It is said that there is no proof that the strings in question were made by Mueller, but under all the circumstances of the case we think it is sufficiently established.

Section 27 of the act of 1905 is as follows:

"That no article of imported merchandise which shall copy or simulate the name of any domestic manufacture, or manufacturer or trader, or of any manufacturer or trader located in any foreign country which, by treaty, convention, or law affords similar privileges to citizens of the United States, or which shall copy or simulate a trade-mark registered in accordance with the provisions of this act, or shall bear a name or mark calculated to induce the public to believe that the article is manufactured in the United States, or that it is manufactured in any foreign country or locality other than the country or locality in which it is in fact manufactured, shall be admitted to entry at any custom house of the United States; and, in order to aid the officers of the customs in enforcing this prohibition, any domestic manufacturer or trader, and any foreign manufacturer or trader, who is entitled under the provisions of a treaty, convention, declaration, or agreement between the United States and any foreign country to the advantages afforded by law to citizens of the United States in respect to trade-marks and commercial names, may require his name and residence, and the name of the locality in which his goods are manufactured, and a copy of the certificate of registration of his trade-mark, issued in accordance with the provisions of this act, to be recorded in books which shall be kept for this purpose in the Department of the Treasury, under such regulations as the Secretary of the Treasury shall prescribe, and may furnish to the Department fac similes of his name, the name of the locality in which his goods are manufactured, or of his registered trade-mark; and thereupon the Secretary of the Treasury shall cause one or more copies of the same to be transmitted to each collector or other proper officer of customs."

Before the passage of this act, it was the law of this circuit that it was not an infringement of a trade-mark to sell the genuine goods identified by the mark so marked. Exactly that thing was held by Judge Wallace in Appollinaris Co. v. Scherer (C. C.) 27 Fed. 18. The company had the sole agency for the sale of Saxlehner's Hunyadi Janos water in the United States and registered the name as a trademark in the Patent Office. Scherer, the defendant, bought the genuine water in Europe, imported it to the United States and sold it under that name. This was held not to be an infringement of the company's rights. So, in Russia Cement Co. v. Frauenhar, 133 Fed. 518, 66 C. C. A. 500, the defendant bought the complainant's glue in barrels and then bottled it with a label describing it as the complainant's glue bottled by the defendant. This was held to be fair competition. The rationale of both decisions is that the defendant in each case was selling the genuine article identified by the trade-mark and the public was not misled, but was getting exactly what it paid for. These deci-

sions, however, were made before the act in question was passed. Assuming that Congress could protect the owner of a registered trademark against the importation by third parties of the genuine article' under that trade-mark, has it done so? We think not. The act prohibits the entry of imported merchandise which shall "copy or simulate" a trade-mark registered under it. The obvious purpose is to protect the public and to prevent any one from importing goods identified by their registered trade-mark which are not genuine. In this case, however, the imported goods were the genuine articles identified by the trade-mark. We assume that Schoening has a valid trade-mark, even if he does not manufacture the strings, Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526, applying to the whole of the United States, and still are of opinion that it is not infringed by one who buys in Germany the genuine article identified by the trade-mark, imports it into the United States, and sells it so marked here.

The order is affirmed.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.