### A. BOURJOIS & CO., Inc., v. KATZEL. *

(District Court, S. D. New York. December 13, 1920.)

No. 19–233.

1. **Trade-marks and trade-names and unfair competition ⬅85(2)—Plaintiff's mark and package held not a fraud on public.**

   Where a domestic corporation had purchased the United States trade-mark rights of a foreign manufacturer of face powder, and was purchasing the powder in bulk from the foreign corporation and packing it in this country in boxes bearing the trade-mark, on the back of which was a statement that the product was made in France and packed in the United States by a domestic corporation, and the evidence showed that the boxes were identified by the public as the domestic corporation's product, the use of the trade-marked boxes was not a misrepresentation in the nature of a fraud on the public.

2. **Trade-marks and trade-names and unfair competition ⬅67—Trade-marks are entitled to strongest protection.**

   A trade-mark has come to be recognized as a property right of immense and incalculable value, whose proprietor is entitled to the strongest protection at the hands of the proper court.

3. **Trade-marks and trade-names and unfair competition ⬅29—Product manufactured abroad cannot be sold here in competition with purchaser from foreign producers of the United States trade-mark.**

   A domestic corporation, which purchased the United States trade-mark of a foreign corporation and engaged in the business of buying the product of the foreign corporation, packing it in this country in trade-marked packages and selling it to the public, can prevent another from purchasing the product already packed in the foreign country and reselling it here in the foreign producer's package, which bore a trade-mark substantially identical with the United States trade-mark.

4. **Trade-marks and trade-names and unfair competition ⬅85(2)—Statute prohibiting importation of fraudulently marked articles does not affect rights between private parties.**

   Act Feb. 20, 1905, § 27 (Comp. St. § 9513), which was in the nature of a customs regulation, to prevent the American public from being deceived by simulated names or trade-marks, concerns only the action of the government through its proper officials, and does not affect a suit between private parties to determine the right to sell trade-marked articles in this country.

In Equity. Suit for injunction by A. Bourjois & Co., Incorporated, against Anna Katzel. On motion for preliminary injunction. Granted.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Order reversed 275 Fed. 539.

Briesen & Schrenk, of New York City (Hans v. Briesen, of New York City, of counsel), for plaintiff.

John B. Doyle, of New York City (John R. Rafter, of New York City, of counsel), for defendant.

MAYER, District Judge. The plaintiff, a New York corporation, is the exclusive owner of certain registered trade-marks for face powder; these trade-marks consisting of the word "Java" and the various labels, which are carried by plaintiff's boxes and serve to identify them as plaintiff's products. Defendant's boxes, as will appear infra, are, with two differences, exact duplicates of plaintiff's boxes.

In 1912, the firm of E. Wertheimer & Cie. of France, Successeurs of A. Bourjois & Cie., also of France, had established in the United States the business in Java face powder in boxes and under labels substantially the same as those in controversy. The trade-mark "Java" was considered and favorably recognized in Wertheimer et al. v. Batcheller Importing Co. (C. C.) 185 Fed. 850. The plaintiff corporation was organized in 1913, and for a consideration, involving, inter alia, the obligation to pay $400,000, bought the entire business then and theretofore carried on by A. Bourjois & Cie., E. Wertheimer & Cie., Successeurs, in the United States, viz. the entire good will of said business in the United States, and any and all trade-marks, trade-names, and trade-mark rights relating thereto in the United States, and also the sole and exclusive right to manufacture and sell in the United States any and all toilet preparations then or theretofore made by the French concern. This transfer of trade-marks included the transfer of the registered trade-mark "Java," the top and other labels of the boxes, and all of the trade-marks which the plaintiff has subsequently used were registered. Thus all of these trade-marks and labels are, so far as the United States is concerned, exclusively the property of the plaintiff. It appears from the papers that during the time plaintiff has been in this business it has expended substantial sums of money for advertising, and, in brief, by reason of its business methods, it has succeeded in creating a wide market in the United States for its products, and the boxes of face powder here under consideration are associated in the public mind with the plaintiff corporation. In other words, it appears that plaintiff has built up, not only an extensive and important business, but also an excellent business reputation for the character of its goods, and that the plaintiff depends in greatest measure upon its trade-marks to prevent invasion of its rights.

Plaintiff, apparently from its inception, has bought and is continuing to buy the powder in bulk from the French firm, A. Bourjois & Cie., and then puts up this powder in the boxes containing the trade-mark inscription. Plaintiff, however, may buy its powder from any house, and will obviously do a favorable business in connection with its trade-marks, so long as it satisfies the public, because one of the assets plaintiff has developed is the assurance to the public of the responsible character of any merchandise, which appears upon the market under plaintiff's trade-marks or in the "get-up" of plaintiff's packages. Two

outstanding features of plaintiff's package are the words "Poudre Java" and "A. Bourjois & Cie."

On the argument of the motion, certain papers were inspected by the court, which fully satisfied the court that the box or package of defendant was the genuine box or package of the French firm of A. Bourjois & Cie., and that defendant had bought abroad the face powder contained in the genuine boxes or packages put up by the French firm. These boxes or packages, the product of A. Bourjois & Cie. in France, were imported by defendant into this country.

The two differences referred to, supra, were as follows:

(1) At the beginning of its business, plaintiff New York corporation put the product out under the name of "Poudre de riz de Java." As rice is regarded as a deleterious ingredient for face powder, plaintiff dropped the words "de riz" and adopted the words "Poudre Java." Under this latter name, plaintiff has marketed its goods for about four years last past. An inspection of plaintiff's and defendant's boxes would at once show that this difference is slight, and that the ordinary purchaser would not stop to distinguish between the boxes, and, if defendant's box were a counterfeit or imitation, a court of equity would at once issue its injunction. In addition, if the plaintiff is right as to the undesirable nature of a rice ingredient, a label containing the words "de riz" might unfavorably affect the sale of plaintiff's product, if the purchaser associated the package with plaintiff.

(2) The second difference is that on the back of plaintiff's box or package are the following words:

"Trade Marks Reg. U. S. Pat. Off. Made in France—packed in the U. S. A. By A. Bourgois & Co., Inc., of New York, Succ'rs in the U. S. to A. Bourjois & Cie. and E. Wertheimer & Cie."

These words are so situated and so printed as fairly to come to the attention of the purchaser, and one of affiants, who has sworn that this package is regarded by the public as plaintiff's product, is the buyer in the perfumery department of the large establishment known as B. Altman & Co.

[1] As the defendant's box or package is manufactured and sold in France, the words just quoted do not appear upon it. It is urged by defendant that plaintiff's product is a misrepresentation, and in the nature of a fraud upon the public, in that it gives the impression that it is manufactured and put up in the original packages in France; but opposed to this argument are the affidavits submitted by plaintiff, which are convincing upon the point that the boxes are identified by the public as plaintiff's product, and further, as appears supra, plaintiff has been careful to state upon its box or package that, while the product is made in France, it is packed in this country by the American firm as successors in the United States to A. Bourjois & Cie. and E. Wertheimer & Cie.

There remains for consideration, then, the important question in the case, which seems to be one of first impression, and that is whether, because defendant's box is a genuine article made and sold by the French concern, it can be said to constitute an infringement of the

trade-marks of plaintiff, when plaintiff is the exclusive owner of these trade-marks in the United States.

[2] In approaching the subject, it must be remembered that "the right of property in trade-marks has come to be recognized as of immense and incalculable value," and that the "proprietor of a trademark by virtue of the manufacture or offering for sale of his goods is entitled to the protection which the highest powers of the court can afford." Scandinavia Belting Co. v. Asbestos & Rubber Works, 257 Fed. 937, 169 C. C. A. 87.

In Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713, the court, in discussing common-law trade-marks, points out that redress is based upon the party's right to be protected in the good will of the trade or business; and the English rule that a trade-mark is not the subject of property, except in connection with an existing business, prevails generally in this country. In Scandinavia Belting Co. v. Asbestos & Rubber Works, supra, the court held that the owner of a registered trade-mark can restrain its use by another, though no loss of sales is shown, and though there may be no fraud between the original seller and buyer of the infringing article.

This is but another way of saying that, where a trade-mark is used in connection with the business of a merchant, and the product sells on the strength of the trade-mark, and because it is associated in the public mind with the plaintiff's product, such a trade-mark is entitled to the strongest protection at the hands of the proper court.

[3] Defendant's trade-mark is genuine, in the sense that it was not spurious at the place of origin, and that no change has been made since it was sold; but it is genuine as matter of law only if defendant has the right to sell within the territory where plaintiff is the exclusive owner of the trade-mark, and, under the doctrine of the Hanover Star Milling Company Case, supra, where, also, plaintiff has established a business in the product in connection with the trade-mark.

The case at bar is obviously stronger than that considered in the Hanover Star Milling Company Case. In the case at bar plaintiff has expended a large sum for the acquisition of the trade-mark title and rights and a large sum for the advertisement of its business. Plaintiff had corralled the American market before defendant's boxes were brought into the American market. If, now, the original French boxes or packages can lawfully be permitted to compete with plaintiff's boxes or packages, it can be readily seen that plaintiff's business may be destroyed, and, in any event, impaired. The question, on its face, is one involving business interests in a large way. If an American business concern buys all of the rights, as in the case at bar, of a business established here by a foreign concern, and then the foreign concern is nevertheless at liberty to compete with the American concern, the result will be that the purchase of rights, under such circumstances, will give little or no protection; and the foreign concern, as well as the domestic concern, will be seriously injured in the long run, because American capital certainly will not be invested, and foreign concerns will find it difficult to sell the rights which they have developed in this country.

It should be said in justice to A. Bourjois & Cie. of France that there is nothing in the record which justifies the conclusion that this competition has been undertaken with their knowledge or consent, and it should be said in justice to defendant that thus far defendant has relied upon what she regards as her legal rights. The question is one of law, which calls for definite and prompt settlement.

[4] In support of the position of defendant, the case of Fred Gretsch Mfg. Co. v. Schoening et al., 238 Fed. 780, 151 C. C. A. 630, is cited. That case involved a construction of section 27 of the Act of February 20, 1905 (Comp. St. § 9513). That section was in the nature of a customs regulation, to prevent the American public from being deceived by simulated name. In other words, simulated trade-marks were to be excluded from importation, so as to safeguard the American public; but there is nothing in that section which was intended to or purported to pass upon the question as to whether any given trade-mark was valid as matter of law as between contending parties. Under section 27, the customs authorities may only exclude an article "of imported merchandise which shall copy or simulate the name of any domestic manufacture. * * *" Thus, if an article is genuine, in the sense of defendant's box, it may be imported into this country, and cannot be stopped at the door of the custom house; but whether or not the article may be marketed here under a particular trade-mark is a question to be determined in ascertaining the rights of parties, quite irrespective of section 27 of the Act of February 20, 1905. Section 27 concerns the action of the government, through its proper officials, in carrying out the safeguarding measures erected by the Congress. The case at bar concerns the rights of private parties, and those rights depend upon rules of law in respect of which section 27 is wholly irrelevant.

In the Gretsch Case the question here presented did not arise. There was no situation, such as this, where the original owner of the business and its trade-marks had completely parted therewith to a vendee, who had proceeded upon the strength of his ownership to develop an American market.

For the reasons thus outlined, I am of the opinion that plaintiff is entitled to the exclusion of defendant's boxes from this market, and the motion for a preliminary injunction is therefore granted.

## Addendum.

Under the Clayton Act (38 Stat. 730) it will be necessary for plaintiff to give security. This amount will be fixed upon the settlement of the order. On the other hand, as the question is novel and defendant is a small dealer, and as the court gathered on the argument that the plaintiff was more concerned with a settlement of the question of law, than it was with the sale of the small amount of merchandise in defendant's possession, the injunction will be suspended on defendant's giving security on appeal in a nominal amount, and provided also that, if defendant intends to appeal, she shall do so promptly.

Submit order on two days' notice.