## COCA-COLA CO. v. BENNETT et, al.

(Circuit Court of Appeals, Eighth Circuit.   December 8, 1916.)

No. 4605.

1. TRADE-MARKS AND TRADE-NAMES ⬤➣68—RIGHT OF OWNER OF TRADE-MARK —UNAUTHORIZED BOTTLING OF GOODS.

A manufacturer of a syrup used with carbonated water to produce a beverage which was sold either at soda fountains or in bottles, whose registered trade-mark covered both the syrup and the beverage, but who bottled none of the beverage, having contracted with others therefor under contracts requiring the purchase of syrup from the manufacturer and its preparation under regulations to protect the quality, can prevent one who has not the manufacturer's consent from bottling the syrup with carbonated water, even in accordance with the regulations, and selling it under the trade-mark, since otherwise the manufacturer would have no means for protecting the quality of the goods sold under his trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. ⬤➣68.]

2. TRADE-MARKS AND TRADE-NAMES ⬤➣68—RIGHTS OF OWNER—SALES IN BULK.

When a manufacturer of an article of food or drink sells it in bulk, and also puts it up in bottles bearing a distinctive trade-mark, the purchaser of the article in bulk cannot legally bottle it and affix the manufacturer's label to the bottle.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. ⬤➣68.]

3. MONOPOLIES ⬤➣21—VIOLATION OF ANTI-TRUST ACT—RIGHTS OF OWNER OF TRADE-MARK.

The invalidity, under Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (Comp. St. 1913, §§ 8820–8830) of contracts by which the owner of a trade-mark covering both a syrup and the beverage made therefrom granted the exclusive right to bottle the beverage, does not affect the owner's right to prevent the sale of the beverage under the trade-mark by one who bottled it without consent.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig. ⬤➣21.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the Coca-Cola Company against Charles G. Bennett and another, copartners doing business as Bennett Mineral & Distilled Water Company. Judgment for the defendants (225 Fed. 429), and plaintiff appeals. Reversed and remanded, with instructions to grant the injunction prayed for.

Frank F. Reed and Edward Rogers, both of Chicago, Ill. (Candler, Thompson & Hirsch, of Atlanta, Ga., Holmes, Yankey & Holmes, of Wichita, Kan., Harold Hirsch, of Atlanta, Ga., and Charles G. Yankey, of Wichita, Kan., on the brief), for appellant.

C. M. Williams, of Hutchinson, Kan., for appellees.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. Appellant brought this action against appellees to restrain an alleged trade-mark infringement and unfair

⬤➣For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
238 F.—33

competition. The trial court, upon consideration of the pleadings and certain stipulated facts, dismissed the complaint for want of equity. The facts upon which appellant relies for relief are substantially as follows:

Appellant is a corporation of the state of Georgia, with its principal place of business at Atlanta, in said state. Appellees are copartners doing business under the firm name of Bennett Mineral & Distilled Water Company at Hutchinson, Kan. Appellant is the owner of the trade-mark "Coca-Cola" and the business of the manufacture and sale of two kinds of syrup in connection therewith. The trade-mark covers both the syrups and beverages made therefrom. It was registered in the Patent Office of the United States January 31, 1893, and again October 31, 1905. The name "Coca-Cola" has been exclusively used by appellant and its predecessors, since on or about the year 1886, for the purpose of identifying the syrups manufactured by it and its predecessors as their own product, and to distinguish it from all other articles marketed and sold by others. The name "Coca-Cola" has been used by said appellant exclusively in connection with its product, by attaching and applying said name to all barrels, kegs, jugs, bottles, and other receptacles containing said product, and also by placing said name on labels in connection therewith.

Great care, skill, and judgment have at all times been used by appellant and its predecessors in the manufacture of said product, Coca-Cola, in order to protect it from contamination and impurities, and in the barreling and putting up of said product, so that the product should reach the consumer in a clean and wholesome condition, and great pains have also been taken by appellant that the bottles and other receptacles in which the product has been placed are free from dirt or objectionable matter, and great amounts of time and labor have been expended by appellant in marketing and selling its product under the name "Coca-Cola" throughout the United States and in foreign countries. Coca-Cola is universally known, and large sums have been expended in advertising said product. The product Coca-Cola is received by the consuming public in two ways—over the soda fountain, and in bottles. The syrup as such is not consumed by the public. At the soda fountain it is mixed with carbonated water, and in bottles it is similarly mixed.

Appellant does not bottle its bottling product itself, but its entire bottling product is sold under contract to two Tennessee corporations, viz. Coca-Cola Bottling Company and The Coca-Cola Bottling Company, which in turn have given the privilege under contract to certain other corporations and individuals to bottle the syrup made for bottling purposes and to use in connection therewith the trade-mark "Coca-Cola." Among the corporations having the privilege of bottling is the Western Coca-Cola Bottling Company. Any person or corporation receiving authority by contract to bottle and sell bottled Coca-Cola in a prescribed territory agrees to bottle the same in the following manner:

To prepare and put in bottles using a crown stopper thereon, a mixture of Coca-Cola syrup and of water charged with carbonic acid gas

under pressure of not less than one atmosphere, said Coca-Cola syrup and said water in said mixture to be used in proportions of not less than one ounce of Coca-Cola syrup to each seven or eight ounce bottle of carbonated water, making thereof a carbonated drink of the strength stated. Said person or corporations also agree not to add any compound, syrup, color, flavoring matter, acid, headings, sugar, or other sweetener, or any other preservative of any name or nature, or any other substance or ingredient whatsoever, or any water, other than pure carbonated water, commonly called soda water, to the syrup furnished by the plaintiff or to the water used for carbonating, and also agree not to use for said Coca-Cola syrup any substitute whatever, or to make any other drink and sell same under the name Coca-Cola.

Coca-Cola Bottling Company and The Coca-Cola Bottling Company of Tennessee take the entire output of the product of the appellant manufactured for bottling purposes. No other person, firm, or corporation buys or can buy the same from the appellant. The appellant is in no way directly or indirectly interested in the two Coca-Cola Bottling Companies, above described, or interested in any of their profits; but the contract between them provides that appellant shall retain control over its trade-mark and have the right of inspection and supervision, for the purpose of securing the bottling of its product according to contract as hereinbefore stated. The two bottling companies, with the consent of appellant, have divided the territory described in the contract between them, and said companies have entered into contracts with other companies, by which contracts local bottling companies are given the exclusive right within certain restricted territory to bottle and sell the bottled product, Coca-Cola.

The Western Coca-Cola Company, organized under the laws of the state of Illinois, is one of these companies. Its territory embraces several states, including Kansas. The bottling companies do not enter into a contract with more than one person, firm, or corporation in the territory allotted to any local bottler. The contracts between the two Coca-Cola Bottling Companies, sometimes referred to as the parent companies, and the various local bottling companies, are always approved and consented to by the appellant. The appellant has no financial interest in the local bottling plants. The appellant sells its bottling product to the parent bottling companies above described, and will not accept any order for said product, except from these two bottling companies, and no other person, firm, or corporation can buy Coca-Cola syrup from appellant for bottling purposes than the companies above described. The local bottling companies are supplied direct from the factories of the parent bottling companies, but the order comes to the appellant through the parent bottling companies, and these bottling companies pay appellant for the bottled product so distributed to the local bottling plants. The shipments of bottling syrup are made both in interstate and intrastate commerce, aggregating a large volume of business.

The defendants are using the trade-mark "Coca-Cola" on a bottled product without the authority or permission of appellant. The prod-

uct so bottled by defendants is the Coca-Cola syrup as manufactured by appellant for bottling purposes, bought by the defendants partly from the Western Coca-Cola Bottling Company and partly from vendees of appellant and in the open market. The said Coca-Cola syrup is mixed by defendants with carbonated water and sold as a beverage under the trade-mark Coca-Cola, and defendants have no contract with or authority from the Coca-Cola Bottling Companies or appellant for bottling the same, and no restriction as to the use of said syrup is agreed upon by defendants with the jobbers or wholesalers from whom they purchase said syrup. All of the Coca-Cola which defendants have manufactured and sold has been made from the Coca-Cola syrup manufactured and sold by appellant in the usual and ordinary way which appellant authorizes and permits· consumers and patrons to manufacture and sell Coca-Cola as a beverage. Paragraph 16 of the complaint, which is admitted by the answer, is as follows:

"That by reason of the premises your orator is rightfully and equitably entitled to the sole and exclusive use of the trade-mark 'Coca-Cola,' and to protection in the use thereof as applied to its products, and in equity and good conscience to protection against all manner and form of fraudulent use and imitation of said trade-mark, and that the public generally has at all times acknowledged and acquiesced in the aforesaid rights of your orator and of your orator's predecessors aforesaid in and to said trade-mark."

[1] The question arising on the facts as above stated is: Have the defendants, without the authority or permission of the appellant, the right to manufacture Coca-Cola as a beverage by mixing the bottling syrup of appellant with carbonated water and sell the same to ·the public under the trade-mark Coca-Cola? The trade-mark "Coca-Cola," covering as it does both the bottling syrup and the beverage made therefrom by adding carbonated water, entitles the, appellant to the exclusive right to manufacture and sell its syrup, and also to make and sell the beverage known as "Coca-Cola." Certainly, if the appellant has the exclusive right to make and sell under its trademark the beverage called "Coca-Cola," it can grant the right and privilege to others to do that which it might do itself; and it necessarily results from this state of the case that no person or corporation can manufacture the bottled beverage called "Coca-Cola" and sell the same under appellant's trade-mark without its consent or authority.

It is true that the appellant has no money directly invested in the business of the bottling companies; but it is very plain that, as the syrup manufactured by the appellant is not itself consumed by the public as such there could be no sale of the syrup unless there was a sale of the beverage ·made therefrom, and so it is apparent that the appellant is directly and greatly interested in having its bottled product delivered to the consuming public under such circumstances and in such manner as will promote the sale thereof. It is also apparent that the only way the appellant can secure the·right to supervise the manner of the bottling of its product is to refuse to grant the privilege of bottling, except upon condition that certain prescribed regulations are complied with. It would, therefore, seem to be too plain for argument that both under the law of trade-mark and upon ·sound reason defendants in the case at bar may not, without the con-

sent and authority of the appellant, manufacture the bottled beverage and sell the same under the appellant's trade-mark, "Coca-Cola."

Counsel for the defendants argue that, as it appears that defendants use the bottling syrup of the appellant and mix the same with carbonated water in the same way that appellant authorizes other persons and corporations to do, they have the right to manufacture and sell under the appellant's trade-mark. But suppose that other persons and corporations without number should be of the same opinion; it would result that appellant would have no control over the integrity of its trade-mark, which is its guaranty that the beverage is as represented, and its business might be ruined. It is true the defendants might sell the bottling syrup which they buy under the appellant's trade-mark; but, since they change the syrup into a beverage without the permission and authority of appellant, they have no right to sell the same under appellant's trade-mark. The argument advanced is also faulty, as it would permit persons other than the owner of the trade-mark to control its use.

[2] The law seems to be settled that when a manufacturer of an article of food or drink sells it in bulk, and also puts it up in bottles, the latter bearing a distinctive trade-mark, a purchaser of the article in bulk will be guilty of unfair competition and be enjoined from bottling and affixing the manufacturer's distinctive label upon the goods bottled by him. Coca-Cola Co. v. J. G. Butler & Sons (D. C.) 229 Fed. 224; Krauss v. Peebles Co. (C. C.) 58 Fed. 585, 592; People v. Luhre, 195 N. Y. 377, 89 N. E. 171, 25 L. R. A. (N. S.) 473; Hennesy v. White, Cox, Manual of Trade-Mark Cases, 377; Brown on Trade-Marks, §§ 910, 759, and authorities there cited. One of the reasons given for this rule is that:

"Unless the manufacturer can control the bottling, he cannot guarantee that it is the genuine article prepared by him."

And as said by Judge Trieber in Coca-Cola Co. v. J. G. Butler & Sons, supra:

"To this may be added that he cannot tell whether it is bottled in so careful a manner as is essential to the preservation of the article and the maintenance of its good reputation."

It would seem that to uphold the contention of counsel for the defendants would be to destroy all the value that the appellant's trade-mark has. It would open the door to any person or corporation to adulterate the beverage sold as Coca-Cola without any right in the appellant to prevent it.

"The greatest value of a trade-mark is the reputation established by the excellence of the article, and the knowledge and appreciation of that fact by the consuming public. An article without any merit can derive no benefit from a trade-mark, and only a temporary benefit from the most extensive advertisement. It is like the value of a 'good will' in an established going concern. It depends upon the successful operation of the business. Without that there is no value to it. Who would pay for the good will of a business conducted at a loss?" Coca-Cola Co. v. Butler & Sons, supra.

The cases of Russia Cement Co. v. Frauenhar, 133 Fed. 518, 66 C. C. A. 500, and Appollinaris Co. v. Scherer (C. C.) 27 Fed. 18,

are cited as sustaining the position of counsel for defendants; but an examination of these cases show that in the Cement Case the same cement without any addition or subtraction was resold under the trade-mark name. If the defendants in this case had simply resold the syrup, it would be within the reasoning of the case cited; but they did not do that. They changed the syrup into a beverage, and they say that they changed it in the same manner that the appellant authorized other persons to do. But the trouble with this argument is that it destroys appellant's exclusive right to its trade-mark, and the resulting right to say who may use it. In the Appollinaris Case the same water, without subtraction or addition, was sold under its true name. Without prolonging the discussion further, we do not think the defendants have the right to manufacture and sell Coca-Cola under the trade-mark name of appellant without its consent.

[3] Counsel for defendants further urge that the contracts which appellant has made with the Tennessee corporations, and which the Tennessee corporations have made with appellant's consent with local persons and corporations, are in violation of the Sherman Law. The trial court seems to have based its ruling in dismissing the complaint partly upon this proposition, it appearing to that court that this suit was one to enforce these contracts. We do not think the validity of the contracts are in any wise brought into question on this record. The appellant simply claims that the defendants have no right to manufacture and sell Coca-Cola under appellant's trade-mark without its consent, and our decision in this case goes no further than to hold that the claim of appellant is well founded. We do not decide that the whole or any part of the contracts made by appellant with the bottling companies are valid. The granting of the consent of appellant to the defendants to manufacture and sell the product Coca-Cola under its trade-mark could be manifested without the contracts mentioned in the evidence. It will be time enough to decide as to the validity of the contracts when a suit arises in which their validity is involved, and when some person is sued who has a contract. Manifestly, if the consent and authority of appellant is necessary in order to manufacture and sell Coca-Cola under its trade-mark, then appellant has the right to impose any such reasonable condition to the granting of such consent as will protect the integrity of the trade-mark.

It results from what we have said that the judgment dismissing the complaint should be reversed, and the case remanded, with instructions to the trial court to grant the injunction prayed for. The question of damages was not considered in the lower court, and that question will be left open to be dealt with as law and justice may require.

ADAMS, Circuit Judge, concurred in the decision of this case, but deceased before the opinion was prepared.