---

### B. V. D. CO. v. ISAAC et al.

(Circuit Court of Appeals, Sixth Circuit. February 6, 1919.)

### No. 3197.

1. INJUNCTION ☞34—RIGHTS OF SELLER—INJUNCTION AGAINST REMOVAL OF MARKS.

A manufacturer of underwear, despite its claim of preservation of good will, could not restrain a jobber who purchased the goods from others from removing secret marks on each carton, placed there by the manufacturer to enable it to detect those of its selected list of jobbers to whom it sold who were cutting prices, since the manufacturer parted with all control over the merchandise and cartons by absolute sale.

2. CONTRACTS ☞116(1)—RESTRAINT OF TRADE—INJUNCTION AGAINST REMOVAL OF SECRET MARKS.

A manufacturer of underwear, which sold only to selected jobbers, could not restrain a jobber, unable to buy directly from it, and who bought from others, from removing certain secret marks on the bottom of each carton of goods, where one of the purposes of the manufacturer in so marking the cartons was to enable it to determine which of its wholesalers cut prices, so that such wholesalers might be stricken from the selected list of jobbers, an unlawful restraint of trade which equity will not aid.

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by the B. V. D. Company against Morris Isaac and others. From decree dismissing the bill, plaintiff appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hans v. Briesen, of New York City, and Murray Seasongood, of Cincinnati, Ohio, for appellant.

James N. Ramsey, of Cincinnati, Ohio, for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

KNAPPEN, Circuit Judge. Plaintiff manufactures the· so-called "B. V. D." underwear, consisting of two-piece suits not protected by patent, as well as union suits, as to which rights under patent are claimed. It sells only to a selected list of jobbers, about 350 in number out of about 850 applicants. Previous to the decision of the Sanatogen Case, 229 U. S. 1, 33 Sup. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150, it sold its union suits under a strict price maintenance agreement. As to the two-piece suits there was no such agreement. Since December 7, 1916 (more than three years after the Sanatogen decision), plaintiff's acknowledgments of receipts from jobbers of orders for goods, both union and two-piece suits, have been accompanied by a form letter expressly designed to secure price maintenance in fact. The statement not only says:

"We consider it important that in the distribution of these goods the prices to be received therefor shall not be either greater or less than those which are fairly reasonable to all concerned. A schedule of prices which we deem fair to all under present conditions is herein set forth"

—but also:

"Any B. V. D. goods which shall be shipped to you should not therefore be sold at prices greater or less than our latest retailers' prices."

Defendant is a jobber at Cincinnati. It had been unable to buy directly from plaintiff, although it had offered complete assurance that prices would not be cut. It was thus compelled to buy from others. Several years before the Sanatogen decision plaintiff inaugurated a system of placing a selected serial number upon the bottom of each carton contained in a given case. This secret mark, being entered on plaintiff's books, furnished means of identifying the jobber to whom the box had been shipped and plaintiff claims this enabled· it to prevent fraudulent substitution. Defendant claimed and exercised the right to remove these secret marks from cartons containing plaintiff's goods. It was to enjoin this action that the bill was filed. Defendant justifies its action as necessary to protect the jobbers from whom it has bought against the consequences of selling below plaintiff's prescribed prices.

The District Court dismissed the bill on the grounds, first, that plaintiff parted with the title to its goods and their enclosing cartons when it sold them, and that it had no concern with defendant's treatment of the cartons after the latter had acquired full ownership; and, second, that one of the purposes, if not the real purpose, of plaintiff in putting the secret mark on the cartons is to enable it to determine which of its wholesalers is cutting prices, with a view ·of striking the offender from the selected list of jobbers.

[1, 2] The District Court was clearly right in dismissing the bill.

The broad rule that the seller of merchandise outright parts with all control over it is no longer open to question. While the decisions to this effect have been for the most part in suits where the protection with respect to price maintenance was claimed under patent, copyright or trade-mark, yet the rule stated was applied, not because of such features, but in spite of them, and upon the fundamental ground that the control of the owner over the article sold ended with the complete passing of title. Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502; The Sanatogen Case, supra; Straus v. Victor Talking Mach. Co., 243 U. S. 490, 37 Sup. Ct. 412, 61 L. Ed. 866, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955; Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; Boston Store v. Amer. Graphophone Co., 246 U. S. 8, 38 Sup. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447.

The question of price restriction apart, there is no merit in the claim that plaintiff has retained such an interest in preserving its own good will as will support its claimed right to relief. The sale of its goods was absolute, and completely passed title, not only to the goods themselves, but to their inclosing cartons. No authorities are cited, nor have we found any, which, since the line of decisions above referred to, lend support to plaintiff's claim. In Coca-Cola Co. v. Bennett, 238 Fed. 513, 151 C. C. A. 449 (so far as material here), it was merely held unfair competition for the purchaser of plaintiff's goods in bulk to sell them in bottles bearing plaintiff's name and trade-mark when plaintiff had already sold to others the sole bottling privilege. Ingersoll v. Doyle (D. C.) 247 Fed. 620, was a case of trade-mark infringement. The recent "Associated Press" decisions seem to us not at all in point. Neither is there application in cases like Wells, etc., Co. v. Abraham (C. C.) 146 Fed. 190 (s. c., 149 Fed. 408, 79 C. C. A. 228); and Miles Medical Co. v. Goldthwaite (C. C.) 133 Fed. 794, where (before the Sanatogen decision) provisions expressly designed to enforce price restrictions were sustained.

The case of B. V. D. Co. v. Kommel, 200 Fed. 559, 119 C. C. A. 39, specially relied upon by plaintiff, is not persuasive of its contention. Not only was that case decided several years before the Sanatogen Case, but what was there said favorable to plaintiff is merely obiter, and apparently not even the unanimously accepted view of the court. Manifestly, cases involving protection of marks on articles still belonging to a plaintiff have no application. Conceding that plaintiff's secret system is susceptible of entirely legitimate and proper use, and even that it was not used illegitimately in the present case, the action below was nevertheless right. There was here no invasion of trade-mark, and no breach or attempted breach of any legitimate trust relation on the part of either defendants or their vendors.

The suggestion that the erasure of the serial number will enable the sale of former season goods as if put out during the current season, and thus affect plaintiff's good will, relates to a condition too remote and unsubstantial to justify the attempted restriction, especially as the purchasers from the plaintiff's jobbers were under no obligation

even to retain or use the boxes in which the goods were originally sold, and sales of past season goods were not forbidden.

It cannot, however, be said that the conclusion of the District Court that plaintiff's reason for using its secret marking system embraced at least the enforcement of its price maintenance system, and thus was an unlawful restraint of trade, is without justification. To say the least, equity will not lend its aid to an attempt of that nature. True, the testimony of plaintiff's president denied such purpose, but in view of all the other testimony in the case, the court was not bound to accept that statement at its face value. The District Judge heard and saw the witnesses, and his conclusions should not be disturbed.

The decree of the District Court is affirmed.