## DOUBLE SEAL RING CO., Inc., v. KEITH.

### No. 13551.

Court of Civil Appeals of Texas. Fort Worth.

May 21, 1937.

Rehearing Denied June 25, 1937.

Robert Sansom and Mack & Mack, all of Fort Worth, for appellant.

Robert B. Young, Jr., of Fort Worth, and Leroy A. & Van Zandt Smith, of Fort Worth, for appellee.

BROWN, Justice.

Appellant, as the manufacturer of certain duly patented piston rings, for use in combustion engines, in 1930, made the following contract with appellee:

"Whereas, The Company is now engaged in the manufacture of a two-part piston ring, commercially known as Double Seal Piston Ring, and is desirous of granting and selling the rights to said piston ring to The Distributor, and

"Whereas, The Distributor is now engaged in the business of selling and distributing said two-part Double Seal Piston Ring, and is desirous of acquiring the selling rights of that portion of the United States, hereinafter described of Double Seal Piston Rings, manufactured by The Company.

"Now therefore, in consideration of the mutual promises, covenants, stipulations and agreements, and the sum of One Dollar ($1.00) lawful money of the United States, each to the other in hand paid, the receipt of which is hereby acknowledged, and other good and valuable consideration, it is covenanted and agreed as follows:

" '1. The Company hereby gives, grants, sells, assigns, transfers and sets over unto The Distributor the exclusive selling rights of the Double Seal Piston Ring manufactured by the Company, in the following territory:

" 'The State of Texas, and the business of all Pipe Lines, Oil and Gas Companies, originating in Texas, Kansas, Oklahoma, Arkansas and Louisiana, and wherever said pipe lines may go.

" '2. This contract shall remain in full force and effect for a period of five years, and as long thereafter as is satisfactory to both parties hereto.

" '3. The Company agrees to allow The Distributor the prices as shown on price list hereto attached, which is printed and shown to be effective October 5th, 1929, subject to the following discounts:

(Here follow the discounts allowed appellee—called Distributor—on the various sizes and types of rings, as applied to the selling prices.)

" '4. All rings sold by The Distributor are to be invoiced by The Company direct to the Customer at the price at which sale is made, and the profit of The Distributor, which will be the difference between the prices specified in paragraph No. 3 of this contract and the prices at which The Distributor sells said rings to his customers, is to be paid to him by The Company on the 20th of each month, covering all accounts collected up to that date.

" '5. The Company agrees not to sell any Double Seal Piston Rings to any person, firm or Corporation, (except through Distributor) directly or indirectly, residing in or transacting business in the territory hereinbefore set forth, during the life of this contract. Should The Company receive inquiries for Double Seal Piston Rings from any firm or corporation residing in, or transacting business in any of the territory herein set out, such inquiries shall be turned over to The Distributor by the Company.

" '6. The Distributor agrees to promote the sale of Double Seal Piston Rings to the best of his ability, and to send all orders received for Double Seal Piston Rings to be manufactured.

" '7. The Distributor agrees not to sell nor offer for sale any Double Seal Piston Rings

in any other territory in the United States, except that outlined and set out as his territory herein. Should The Distributor receive inquiry for Double Seal Piston Rings from any person, firm or corporation residing in or transacting business in any other territory in the United States, other than his own territory herein set out, he agrees that such inquiries shall be turned over to The Company.

"'8. It is mutually agreed that the prices and discounts as set out in this price-list hereto attached can be changed only by mutual consent.

"'9. This contract is not transferable, except by mutual agreement.'"

Appellee, under proper averments, alleged a breach of the contract by appellant and set forth his damages. He attached the contract as an exhibit to his petition.

The case being tried to a jury, the trial court rendered judgment for appellee on the verdict returned.

Appellant (defendant below) has appealed.

No statement of facts is brought before us. No motion for a new trial was filed in the trial court.

The three assignments of error presented are as follows:

"1. The Trial Court erred in refusing to sustain appellant's general demurrer and special exception wherein appellant urged that the contract sued upon was violative of articles 7426 to 7437 of the Revised Civil Statutes of Texas of 1925 because these statutes are not in contravention of the Fourteenth Amendment to the Constitution of the United States.

"2. The Trial Court erred in overruling appellant's general demurrer and special exception for the reason that the contract sued upon is void and of no legal force and effect because it creates a trust and is violative of the provisions of articles 7426 to 7437 of the Revised Statutes of Texas of 1925, commonly known as our State Anti-Trust Laws.

"3. The Trial court erred in overruling appellant's general demurrer and special exception because the contract sued upon by appellee is void and of no legal force and effect because it violates the spirit of title 15, sections 1 to 15 inclusive of the United States Code Annotated, commonly known as the Sherman Anti-Trust Law and the Clayton Act [15 U.S.C.A. § 1 et seq.]."

There is nothing in the transcript advising us that appellant's "General Demurrer and Special Exception" were ever urged in the trial court, or acted upon.

We take it that the established rule is that a litigant may present his appeal, under such circumstances, and that he can rely upon fundamental error. And that fundamental error need not be specifically raised by an assignment of error.

We gather from appellant's brief that he relies upon the proposition that the contract (the breach of which furnishes appellee a cause of action) is one in violation of the anti-trust laws of both the United States and the state of Texas.

Therefore, regardless of the language used in the so-called assignments of error, we are duty bound to consider this question: Is the contract one that violates either, or both, the anti-trust laws of the United States and of the state of Texas?

We do not think so.

We must indulge the presumption that every material averment of appellee's petition has been supported by competent evidence, and that the evidence amply supports the verdict of the jury. This because no statement of facts is brought before us and no proper attack is made upon the verdict.

In fact, appellant, in the oral argument, admits that, unless the contract is in violation of the anti-trust laws, as urged by it, the judgment must stand.

Under the allegations of appellee's pleadings, which must be taken as the established facts, and even under the provisions of the contract in question, we find that appellee had an exclusive agency contract, covering certain territory. No piston rings were sold to him. The sale price of no rings was charged to him. He was required, under the contract, to send all orders for rings directly to appellant, and appellant shipped and billed same directly to the purchaser, and paid appellee, once per month, the commissions due on the sales. Such commission was contracted to be the difference between the discount price, as made to appellee, and the actual price at which the goods were sold to the purchaser.

In the case of United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362, where, under a contract very similar to the one before us, the manufacturer of a patented article made arrangements

with certain merchants by which the latter became agents for the sale of the manufacturer's goods at prices fixed by the manufacturer, under which the title was retained by the manufacturer until the goods were sold, and the sales were under his control, it was held that such contract was not invalid, under the federal anti-trust laws, notwithstanding the fact that the system of distribution extended over the entire country and embraced a large number of agents who were required to guarantee the accounts, when sales were made, and who were responsible for all stock lost, missing, or damaged, and who agreed to pay the expenses of storage, cartage, local transportation, handling, sale, and distribution.

It seems to us that the contract before the Supreme Court, in that reported case, is much nearer the inhibited undertakings covered by the federal anti-trust laws than the contract before us.

We cite also E. Bement & Sons v. National Harrow Co., 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058.

█ Appellee having entered into an exclusive sales agency contract with appellant, covering appellant's patented goods, there is no violation of the federal anti-trust laws involved in the transaction. Under the facts before us, there cannot be, and is not presented a case where the anti-trust laws of Texas are involved.

In the case of Coca-Cola Co. et al. v. State, 225 S.W. 791, 793, Mr. Justice Jenkins, speaking for the Court of Civil Appeals (Austin District) said:

"Private monopolies are contrary to the genius of a commercial people, and contracts in restraint of trade are not looked upon with favor. The Constitution of the United States, however, expressly provides for the creation of monopolies in the matter of patent rights, trade-marks and copyright. Article 1, § 8. Congress has legislated under this provision, and no state can nullify its acts. 'The very object of these laws is monopoly.' E. Bement & Sons v. Harrow Co., 186 U.S. [70] 91, 22 S.Ct. 747, 46 L.Ed. [1058] 1069; Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co. (D.C.) 224 F. [566] 572. The value of a trade-mark to its owner consists in the monopoly which it gives him by reason of his exclusive right to use the same. Kidd v. Johnson, 100 U.S. 617, 620, 25 L.Ed. [769] 770; Coca-Cola Co. v. Butler & Sons (D.C.) 229 F. 224;

Coca-Cola Co. v. Bennett, 238 F. 513, 151 C.C.A. 449; Baglin v. Cusenier Co., 221 U. S. 580, 31 S.Ct. 669, 55 L.Ed. [863] 869.

"The owner of a patent right, copyright, or trade-mark, having the exclusive right to manufacture and sell the article protected thereby, and being under no legal obligation to grant such right to another, may impose upon his assignee such restrictions as he may see proper, and to which his assignee will agree, including the price at which the article may be sold, the territory in which it may be manufactured and sold, the material that may be used in its manufacture, or in connection therewith. Bement v. Harrow Co., supra; Coca-Cola Co. v. Bennett, supra; Clark v. Wire Fence Co., 22 Tex.Civ. App. 41, 54 S.W. 392; Bauer & Cie v. O'Donnell, 229 U.S. 1, 33 S.Ct. 616, 57 L.Ed. [1041] 1046, 50 L.R.A.(N.S.) 1185, Ann.Cas. 1915A, 150; Victor Talking Machine Co. v. Straus (D.C.) 222 F. 524."

Even if the contract before us should be held to be one in which the sale price of the article was fixed by appellant, we must conclude that it does not violate the provisions of the anti-trust laws of Texas.

But we are not warranted in holding that the contract fixes the prices at which the goods must be sold by the distributor.

The language of the contract is not such that it must be so construed. The profit, or commission paid to the distributor, is the difference between the prices as made to him and the prices at which he sells to the purchaser, and we do not find any language in the contract binding the Distributor to sell at any fixed price. There is an evident ambiguity which appears in the language used in paragraphs 3, 4, and 8, and we gather from the allegations in the pleadings that the parties operated under the contract for several years before the alleged breach. How they so operated, and the prices at which all sales were made, must have been brought out in the evidence, and we are denied the privilege of ascertaining these facts because of the absence of a statement of facts.

Concluding that the contract before us is an exclusive sales agency contract, we cite the following cases supporting our contention that the contract does not violate the Texas anti-trust laws: Welch v. Phelps & Biglow Wind Mill Co., 89 Tex. 653, 36 S.W. 71; Cole Motor Car Co. v. Hurst et al. (C. C.A.) 228 F. 280.

432

We do not believe that the cause should be affirmed with damages, as it was appellant's right to appeal the case on the sole issue of the invalidity of the contract.

Concluding that the contract is enforceable, we affirm the judgment of the trial court.