TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Johnnie A. LAYTON, Appellee.

No. 6384.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 22, 1954.

Rehearing Denied March 22, 1954.

Turpin, Kerr & Smith, Midland, for appellant.

Bob Huff, Lubbock, for appellee.

PITTS, Chief Justice.

This is a workmen's compensation case in which appellee, Johnnie A. Layton, filed suit against appellant, Texas Employers' Insurance Association, for compensation as a result of injuries sustained by him while working for an employer who carried protection for him as an employee with appellant. The case was tried to a jury which returned a verdict upon which the trial court rendered judgment for appellee for the sum of $8,904.22, payable in a lump sum, it appearing that appellant had previously voluntarily paid appellee $25 per week for five weeks, making a total sum of $125 as weekly compensation.

The jury found that appellee sustained an accidental personal injury on April 19, 1952, while working in the course of his employment for Davidson Drilling Company, as a result of which he was totally and permanently incapacitated from the date of injury. It further found that the injury sustained was not confined to appellee's right hand; that $94 per week was the average weekly wages paid an employee of appellee's class and that it would result in manifest hardship and injustice to appellee if he were not paid the lump sum. Such are the findings upon which the trial court's judgment is based. Appellant has not attacked any of the jury findings or challenged the court's judgment because of such findings. Appellant predicates its appeal upon one point charging jury misconduct.

The record reveals that appellee received injuries while he and two other employees were working underneath the derrick floor of an oil well rig. Such injuries occurred when appellee got accidentally caught between a 600 pound nipple and what is known as a "blowout preventer". According to the jury verdict, well supported by evidence, such injuries resulted in total and permanent incapacity of appellee because of serious injuries to his neck, shoulder or upper back and his right hand. Appellant admits that the evidence conclusively shows and it is admitted that appellee received injuries to his right hand, but it contends that the evidence is conflicting and inconsistent "as to just how the accident occurred". In our opinion the material issues were whether or not appellee received the alleged injuries while engaged in the course of his employment. The jury found he did and appellant has not challenged such findings, which are

supported by the evidence, including medical testimony. We do not consider it material that there may have been conflicting testimony as to how the accident occurred.

Appellee testified that he and the other employees had bolted down the blowout preventer and were making other connections when he was injured. He further testified that he was working at the time in the cellar, which is a hole about four feet deep and six feet square located under the derrick floor, which was about ten or twelve feet above the ground. While testifying concerning the oil rig, sub-structure and cellar where he received his injuries, appellee drew a diagram or sketch of it on a blackboard before the jury in order to explain more fully how his injuries occurred and that diagram still remained on the blackboard when a hearing was had on appellant's motion for a new trial.

In its amended motion for a new trial appellant alleged jury misconduct and that the jury was influenced by evidence given to the jury during its deliberation particularly by jurors Stamford and Trout. The said motion was supported by an affidavit from juror Tom Warren attached thereto and made a part thereof.

Upon the hearing of the said motion four jurors testified concerning the issues raised, namely, Tom Warren, Clyde Trout, Orin Byrd and Pat Crow. Warren testified that during the jury's deliberation they were divided eleven to one on each and every issue submitted by the trial court for a period of five or six hours and he was the juror who was holding out against the others; that he and the other jurors disagreed about where appellee was when he claimed he received the injuries and during the argument two jurors drew a map or sketch that purported to represent the sketch appellee had drawn on the blackboard and it was similar to that sketch but he believed there were differences in the two sketches; that at his request the jury returned to the courtroom, with permission of the trial court, and again observed the sketch appellee, as a witness, had drawn before the jury on the blackboard but he was still not satisfied that the two sketches were alike. The testimony of the other three jurors contradicted Warren's testimony in that they each testified that after the jurors again viewed the diagram drawn on the blackboard by appellee, with permission of the court first had, and returned to the jury room for further deliberation, juror Warren said he stood corrected and joined the other jurors in returning a unanimous verdict on all the issues. Juror Trout particularly testified that he drew the sketch in the jury room and it was identical with and exactly like the one appellee had drawn on the blackboard and juror Warren so admitted after convincing himself by again observing the one appellee had drawn. Trout further testified that Warren said in the jury room soon after again seeing the sketch appellee had drawn, "You fellows are right and I am wrong. I am convinced." Warren also testified that juror Trout told him in the jury room during the jury's deliberation that he (Trout) had worked around oil rigs and knew from his personal experiences that appellee's testimony concerning the oil rig, surroundings and how appellee received his injuries were correct and that other jurors said as much concerning their personal experiences during their deliberation, but he could not recall their names, although he had sworn in his affidavit attached to appellant's motion that jurors Trout and Stamford had both made such statements. Juror Trout testified that he was a farmer but had worked some around oil wells, but he emphatically denied making any such statements to Warren as Warren testified he had made and he and the other jurors, Byrd and Crow, all testified that they never heard any such statements made by any jurors at any time during the jury's deliberation. The said three jurors further testified that the jury read and followed the trial court's charge and the issues submitted were determined in accordance with the evidence heard and nothing else. Warren likewise testified that some jurors, whose names he could not recall, also related in the jury room incidents about injuries they or their families had received, but he could not give the details of such. Jurors Trout, Byrd and Crow testified

that they never heard any such statements made by any juror during their deliberations. Warren further testified that he thought appellee was working on a floor over the cellar and on a level with the ground when he claimed he was injured but other jurors said there was no floor over the cellar and appellee was in the cellar at such time when he (Warren) then changed his mind. However, he later testified that he never was convinced. Warren likewise testified that if appellee had actually been hurt, he would have been for him, but he never did believe appellee had been hurt and did not then believe appellee had ever been hurt, while all of the evidence heard at the main trial conclusively showed appellee was hurt at the time and place alleged and appellant admitted such and voluntarily paid appellee $25 per week as compensation for several weeks.

Appellant attempts to attach some significance to an affirmative answer the juror Trout gave to a lengthy question propounded to him by appellant's attorney, a part of which question propounded was to the effect that "some of the jurors told Warren they had been around these rigs, or words to that effect, and appellee had to be down in the cellar" when he was injured. But Trout corrected his testimony when he realized what his affirmative answer to the lengthy question meant and testified consistently with his previous testimony to the effect that the argument made to juror Warren was based on the evidence heard from the witness stand and not on personal experiences otherwise.

■■ The trial court made no findings on fact issues of jury misconduct but simply overruled appellant's motion for a new trial, in which event it will be presumed that the trial court made such findings as were necessary to support its judgment. Balque v. Green, Tex.Civ.App., 193 S.W.2d 705. In such cases the trial court has the right to resolve inconsistencies in testimony in favor of the validity of the verdict and such findings by the trial judge are binding. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, and Texas Employers' Ins.

Ass'n v. Hicks, Tex.Civ.App., 237 S.W.2d 699.

■ Under the provisions of Rule 327, Vernon's Texas Rules of Civil Procedure, regarding a motion for a new trial because of alleged misconduct of the jury, the party asserting such misconduct has the burden of proving by a preponderance of the evidence that such misconduct occurred concerning a material issue and that such misconduct probably resulted in injury to the said party. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989; City of Dallas v. Hutchins, Tex.Civ. App., 226 S.W.2d 155; Menefee v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287. In the case of Fisher v. Leach, Tex. Civ.App., 221 S.W.2d 384 and 393, the court, in construing Rule 327 and citing the Barrington-Duncan case in support thereof, said:

"The question of whether or not any particular alleged act of misconduct actually occurred is a matter to be determined by the trial court under the rules generally applicable to fact issues. 'If the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that question should be accepted as final.' "

In the case of City of Dallas v. Hutchins, supra [226 S.W.2d 157], the court said in part: "The trial court is no longer required to grant a new trial if it has only a reasonable doubt as to whether or not misconduct affected the verdict."

■■ We find no fault with the authorities cited by appellant in support of its claims, but the cases they have cited did not involve factual situations such as are here presented. In the case at bar we have pointed out contradictions and inconsistencies in the testimony given by juror Tom Warren as compared with that given by the other jurors who testified. The record reflects other inconsistencies which are not very material. Then Warren's testimony is not only inconsistent in some respects with that

given by other jurors who testified but his testimony to the effect that he never did think appellee was hurt was wholly inconsistent with the overwhelming weight of the evidence heard in the main trial. Warren's testimony to the effect that he was never completely convinced that the other jurors were correct in their arguments made was wholly inconsistent with the testimony given by other jurors, especially the testimony given by Trout to the effect that Warren finally said: "I am convinced. You fellows are right and I am wrong." Warren did not deny making such statements. Soon after the jury began its deliberation, it found itself divided eleven to one on every issue. Warren would not agree to even answer the first three issues favorably to the effect that appellee received injuries on April 19, 1952, while engaged in the course of his employment by Davidson Drilling Company when the evidence overwhelmingly supported an affirmative answer to these issues. The record reveals that Warren took the position in the jury room that appellee was working on a floor over the cellar and on a level with the ground at the time he claimed he was injured, while the other jurors took the position that appellee was down in the cellar, which was about four feet deep and six feet square, making the machinery connections over or above the cellar about even with his head and shoulders when he was injured. Warren doubted the accuracies of the diagram drawn by juror Trout until the jurors again observed the diagram drawn by appellee on the blackboard, after which all four jurors testified that there were no more arguments and a unanimous verdict was rendered by all jurors on all issues. It was the viewing again of the diagram on the blackboard, which was a part of the evidence, that convinced Warren that the other jurors were right and he was wrong. At the hearing Warren's testimony was inconsistent with his own acts and conduct in reaching a final verdict agreeable with the other jurors. However, after the verdict had been returned and accepted, an insurance adjuster counseled with Warren and procured from him an affidavit charging jury misconduct. Warren followed it up at the hearing by giving testimony in support substantially of his affidavit previously made, although part of his testimony concerning the material issues was contradicted by the testimony of the other three jurors and part of his testimony was inconsistent with his own acts and conduct and sought apparently through his mental processes to impeach his own verdict. As a result of the conflicts in the evidence given by the jurors concerning material issues, the trial judge was justified in resolving the conflicts in favor of the jury verdict and its judgment. For the reasons shown and because of apparent inconsistencies reflected in Warren's own testimony, the trial judge may have disregarded all of Warren's testimony, which he had a right to do since he was the judge of the credibility of the witnesses and was charged with the duty of determining the issues presented. At any rate, under the record presented and according to the cited rules of law governing such a matter, it is our opinion that the trial court was justified in finding and concluding that no jury misconduct actually existed and that whatever happened in the jury room did not in any event probably result in any injury to appellant. Appellant's point to the contrary is overruled.

Appellee seeks by a cross-assignment to recover a 10% penalty on the alleged grounds of delay without sufficient cause for appeal as provided for in Rule 438. A careful examination of the entire record and the rules of law governing such matters convinces us that appellee has not satisfactorily established that appellant had no reasonable ground at the time the appeal was perfected to believe the judgment would be reversed. For that reason appellee's cross-assignment is overruled. Traders & General Ins. Co. v. Batson, Tex.Civ.App., 253 S.W.2d 488; Traders & General Ins. Co. v. Durrette, Tex.Civ.App., 258 S.W.2d 346; Texas Acceptance Corporation v. Simpson, Tex.Civ.App., 154 S.W.2d 281; Wallace v. Renfroe, Tex.Civ.App., 124 S.W.2d 456; Double Seal Ring Co. v. Keith, Tex.Civ.App., 107 S.W.2d 428.

For the reasons stated the judgment of the trial court is affirmed.