## HUNYADI JANOS CORPORATION v. STOEGER.

(Circuit Court of Appeals, Second Circuit. October 31, 1922.)

### No. 110.

1. **Trade-marks and trade-names and unfair competition ⊂⇒54½, New, vol. 16A Key-No. Series—Importation and sale under foreign trade-mark does not infringe American trade-mark.**

   The importation and sale in the United States of an article made in a foreign country, bearing the trade-mark under which it is known and sold in that country and also in this country, is not an infringement of the American trade-mark on the same imported article, though the American trade-mark is owned by a competitor.

2. **Trade-marks and trade-names and unfair competition ⊂⇒92—Allegation of establishment of agency does not establish transfer of exclusive rights under trade-mark.**

   An allegation that a foreign company had established an office and place of business in this country from which it distributed its product is consistent with the theory that the office was a mere agency, which had no exclusive rights in the business or in the trade-marks which it could sell, or which would prevent the foreign company, from opening at any time any number of other agencies in this country, and does not show that the purchaser of the American trade-marks owned by that agency acquired a right to exclude competition from the foreign company.

3. **Trade-marks and trade-names and unfair competition ⊂⇒54½, New, vol. 16A Key-No. Series—Collusion between importer and foreign house immaterial, unless exclusive rights have been transferred.**

   In a suit by an owner of American trade-marks acquired by purchase from the Alien Property Custodian, who had taken them from an agency of the foreign house, to enjoin the sale under the trade-mark in the original packages and with the original labels of the imported product, it is immaterial that there was collusion between the foreign house and the defendant, who was importing and selling its product, where the agency which owned the American trade-marks had no exclusive right as against the foreign house to distribute its products in this country.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Hunyadi Janos Corporation against Alexander F. Stoeger. From an order denying a preliminary injunction, plaintiff appeals. Affirmed.

Harry D. Nims, of New York City, for appellant.

Hans V. Briesen, of New York City, for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This case involves rights arising under a trade-mark. It appears that on December 21, 1918, the Alien Property Custodian of the United States, acting under the provisions of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.), seized the business of the "firm of Andreas Saxlehner" in the city of New York as the property of an alien enemy resident in Budapest, Hungary, which country was at that time at war with the United States. He at the same time seized certain trade-marks as belonging to the business conducted under the

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

name of Andreas Saxlehner at New York City, the trade-marks being registered in the United States Patent Office; and the seizure of such trade-marks was filed in the office of the Commissioner of Patents on December 24, 1918. The trade-marks so seized may be found in the margin.[1] It appears, also, that on January 25, 1919, the Alien Property Custodian sold for a valuable consideration the business so seized by him to the Partola Manufacturing Company, of New York City, and gave a bill of sale therefor, which was duly recorded; and on May 19, 1919, the Partola Manufacturing Company transferred to the plaintiff the business so purchased by it and the bill of this sale was also recorded.

The plaintiff alleges in its complaint that it thereupon became and ever since has been the only true and lawful owner of the business conducted under the name of Andreas Saxlehner at New York City, and is the owner of all the trade-marks above referred to, and of all the good will in the United States attaching to or associated with the name of Andreas Saxlehner and with the said label and trade-marks. It alleges that these were conveyed to the plaintiff's predecessor and to the plaintiff as an appurtenance to the business seized and conveyed as aforesaid; the same having been owned and used in the United States by the said enemy owner.

The defendant, also a citizen of New York and engaged in business in New York City, is an importer of various German products. He is alleged to have imported mineral water, which he claims is bottled by the firm of Andreas Saxlehner in Hungary, and has sold and is threatening to continue to sell this water under the names of "Hunyadi Janos" and "Andreas Saxlehner," and in containers to which is attached a label similar in every detail to that used by the plaintiff. The mineral water so sold and offered for sale by the defendant is sold without the authority or permission of the plaintiff, and the labels attached to the bottles have been placed thereon without the plaintiff's authority; and this is claimed to be a direct infringement of the plaintiff's trade-marks.

The complaint contains the following interesting allegation:

"Plaintiff is informed and believes, and therefore alleges, that the defendant has imported said water by reason of and in connection with, and as the purpose and outcome of, a conspiracy and agreement on the part of the persons now owning the Saxlehner concern at Buda-Pesth and the defendant to circumvent and defeat the acts and purposes of the government of the United States of America in seizing and selling the Saxlehner concern in New York City as aforesaid, and to enable the said owners of the Saxlehner business,

| [1] Number. | Description. | | Date. | | |
|---|---|---|---|---|---|
| No. 14,251 | "Janos" | Renewed | April | 5, | 1917 |
| 14,252 | "Hunyadi" | " | April | 5, | 1917 |
| 28,766 | "Hunyadi Janos" | Dated | August | 18, | 1896 |
| 29,700 | "Hunyadi" | " | March | 16, | 1897 |
| 72,969 | "Hunyadi Janos" | " | March | 9, | 1909 |
| 72,970 | "Hunyadi" | " | March | 9, | 1909 |
| 72,971 | "Janos" | " | March | 9, | 1909 |
| 85,181 | Portrait of Hunyadi Janos | " | Jan. | 30, | 1912 |
| 89,705 | Name and portrait (for pills) | " | Dec. | 31, | 1912 |

a former alien enemy of the United States, to now obtain for themselves again the property and business so seized by the government of the United States without expense to themselves, and to this end and for this purpose to discredit the plaintiff, and to destroy, by any and all means possible, the confidence of the public in the representations of the plaintiff that it is the true and lawful owner of said business in the United States, and to destroy in the hands of the plaintiff the value of the property which it has purchased from the government of the United States as aforesaid, and, in short, to restore to the Saxlehner concern the identical business property and trade-marks which were duly and lawfully seized by the United States Government from this concern during the war, and by the government transferred to the plaintiff's predecessor, and that the importation and sale of the water now sold and offered for sale by the defendant constitutes an infringement of the plaintiff's said trade-marks and a violation of the plaintiff's rights under and by reason of its purchase of the Andreas Saxlehner business at 130 Fulton street, New York, as aforesaid, and is a direct and deliberate attempt by the Saxlehner concern, formerly an alien enemy of the United States, and the defendant, to circumvent the United States government and the plaintiff as aforesaid, and is in defiant and direct contravention of the statutes of the United States under which such seizure and sale was made."

It appears that the only thing complained of in this suit is that the defendant offers for sale, in the United States, under the name of "Hunyadi Janos," certain waters bought directly by the defendant from the owners and sole proprietors of the famous Hunyadi Janos springs in Hungary. The defendant states in his affidavit that he has never bought or sold any water other than the genuine Hunyadi Janos water, and in his affidavit he declares:

"The bottles of Hunyadi Janos which I sell are offered by me to the trade in exactly the same form as they come to me; that is, every label, capsule, etc., which the merchandise bears is the genuine label, capsule, etc., of the firm of Andreas Saxlehner of Budapest and was affixed to the merchandise by said firm."

The plaintiff asks that the defendant be enjoined as follows:

"(a) From importing or procuring, directly or indirectly, either in bottles, bulk, or any form whatever, any bitter water under or in connection with the name 'Hunyadi Janos,' the medallion of the knight's head, the name 'Andreas Saxlehner,' or any colorable imitation of the plaintiff's label referred to above, and from in any other way, directly or indirectly, infringing the plaintiff's said trade-marks.

"(b) From using or employing in the importation, advertising or selling, or offering for sale, of bitter water or mineral water or any beverage, excepting only waters sold by the plaintiff, any of the plaintiff's trade-marks or labels or any colorable imitation of any of them.

"(c) From doing any act or thing which, directly or indirectly, destroys or tends to destroy, or impairs or tends to impair, the value, in the hands of the plaintiff, of the rights, trade-marks, property, good will, or of anything seized by the United States of America in connection with its said seizure of the business of Andreas Saxlehner at 130 Fulton street, New York, and from doing any act or thing, directly or indirectly, which will tend to restore the said business or return the said business to the alien enemy from whom it was seized as aforesaid."

An accounting is also asked. A temporary restraining order was issued upon the complaint and affidavits. Subsequently the restraining order was vacated, and the motion for a preliminary injunction was denied, and this appeal was taken.

[1] This court in A. Bourjois & Co., Inc., v. Katzel, 275 Fed. 539,

held that the importation and sale in the United States of an article made in a foreign country, bearing the trade-mark under which it is known and sold in the country where made and also in this country, is not an infringement of the American trade-mark on the same imported article, though that is owned by a competitor. In that case it was assumed that the plaintiff, a New York corporation, was the owner of the French manufacturer's trade-marks, and that it would be a breach of the French firm's obligations for it to sell its face powder in this country. But we held that, as the defendant bought the face powder in France and herself imported it into this country and sold it in the original boxes in which she purchased the powder this did not constitute an infringement of the American trade-mark. We are unable to distinguish that case from the one now before the court. If we assume for the purposes of the argument that the plaintiff obtained a good title to the business in this country of the firm of Andreas Saxlehner in Hungary and owns here the trade-marks, claimed, nevertheless as the defendant purchased the water in Europe and it is the genuine Hunyadi Janos water, he is offering it to the trade in the same form in which he imported it and the labels were affixed to it by the firm of Andreas Saxlehner in Budapest we see no distinction in principle between this case and the Bourjois Case. We do not therefore deem it necessary now to inquire as to the effect of the sale made by the Alien Property Custodian, and whether the plaintiff has acquired legal title to the trade-marks.

[2] If the firm of Andreas Saxlehner in Hungary had transferred along with its trade-marks its American business exclusively to the New York firm, and had thereafter undertaken to compete with the latter by exporting its waters to the United States for sale here, its conduct would have afforded a ground for equitable jurisdiction. See Appollinaris Co. v. Scherer (C. C.) 27 Fed. 18, 20; A. Bourjois & Co. v. Katzel (C. C. A.) 275 Fed. 539, 542. But whether it did so transfer its business and trade-marks, and whether the complainant by virtue of the sale made by the Alien Property Custodian has acquired the exclusive right, title, and interest in the business in this country and the right to the trade-marks, we need not now inquire. For there is no sufficient allegation in the complaint that such a transfer was ever made. The allegation may be found in the margin.[2] It only alleges that the Saxlehner concern established an office and place of business in New York from which it distributed its mineral wa-

[2] "At a date unknown to the plaintiff, the Saxlehner concern established in the United States an office and place of business, from which as plaintiff is informed and believes, and therefore alleges, it distributed to various buyers in the United States and other countries its mineral water and other products. In 1917 and 1918, this business was conducted under the name of Andreas Saxlehner, at 130 Fulton street, New York City. From this office goods were shipped, bills were sent out, payments received, and the business of selling in the United States the merchandise of the Saxlehner concern was entirely and completely conducted by it, and this business was a going concern at the time of the outbreak of the war between the United States and the Empire of Austria-Hungary, and at the time of the seizure of the same as hereinafter set forth."

ters. But that is consistent with the theory that this New York office was a mere agency of the Saxlehner concern, which agency had no exclusive rights in the business or in the trade-marks which it could sell or assign, or which could prevent the Hungarian company from opening at any time any number of other agencies in the United States, or from interfering in any manner it saw fit therewith.

[3] The allegation as to collusion between the defendant and the Saxlehner house in Budapest is without importance, unless the New York office possessed exclusive and independent rights against the parent concern which is nowhere alleged. At the argument it was urged that in the present case justice required that this litigation should not be continued, and that the court should direct not only the confirmation of the order appealed from, but a dismissal of the bill as a whole. But without enlarging upon the matter further it must suffice to say that there are reasons why we do not deem it best that the bill should be dismissed at this time.

The order denying the preliminary injunction is affirmed.