**OLYMPUS CORPORATION, Plaintiff,**

v.

**UNITED STATES of America; Ronald T. Regan, and William VonRaab, Defendants.**

**No. CV–84–0920.**

United States District Court,
E.D. New York.

Aug. 22, 1985. ·

Whitman & Ransom, New York City by Max Schutzman, John Hadlock, for plaintiff.

Department of Justice, Washington, D.C. by Velta A. Melnbrencis, and Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. by Charles Kleinberg, for defendants.

James C. Tuttle, Troy, Mich., and Gillen & Calideno, New York City by Michael J. Gillen, and Steele Simmons & Fornaciari, Washington, D.C. by Robert W. Steele, for K-Mart.

Miller Cassidy Larroca & Lewin, Washington, D.C. by Nathan Lewin, for 47th Street Photo Corp.

SIFTON, District Judge.

This is an action brought by Olympus Corporation, a New York Corporation, doing business in Nassau County, for declaratory and injunctive relief against the enforcement of 19 C.F.R. § 133.21(c), which provides that certain restrictions upon the importation of trademarked goods do not apply when "the foreign and domestic trademark ... owners are parent and subsidiary companies or are otherwise subject to common ownership and control."

As set forth in this Court's Memorandum and Order of November 15, 1984, it is essentially undisputed that plaintiff is the exclusive United States distributor of Olympus-brand optical products, including photographic products and accessories such as cameras, lenses, flash units, and filters, all of which are manufactured in Japan, and that it owns the rights in this country to the Olympus trademark for those products. Olympus is a subsidiary corporation of Olympus Optical Company Ltd. ("Olympus Optical"), a Japanese corporation which is the manufacturer of Olympus-brand products, and the owner of the rights to the Olympus mark in Japan.

Defendants are the United States of America; Donald T. Regan, in his capacity as Secretary of the Treasury; and William Von Raab, Commissioner of the United States Customs Service (the "federal defendants"). In addition, 47th Street Photo and K-Mart Corporation have sought leave to intervene as defendants. It is not disputed that 47th Street Photo is a New York City retailer of electronic equipment, including Olympus-brand products or that K-Mart is a national retailer operating more than 2,000 stores. Both proposed defendant-intervenors sell or propose to sell so-called "gray market" goods, as hereinafter defined, to consumers at discount prices.

In April 1978, the United States Customs Service accepted the Olympus trademark for import protection, pursuant to 15 U.S.C. § 1124 ("Section 42") and 19 U.S.C. § 1526 ("Section 526"). However, Customs specifically declined to prohibit importation into the United States by unrelated third parties (such as K-Mart and 47th Street Photo) of merchandise bearing the Olympus trademark and manufactured by Olympus Optical. Olympus alleges in its complaint that 19 C.F.R. § 133.21(c), which permits the importation of what are colloquially referred to as "diverted" or "gray market" goods—goods produced by a foreign manufacturer and bearing that manufacturer's trademark which are purchased abroad and imported by persons other than the manufacturer's authorized distributor—is *ultra vires*. Plaintiff argues that the regulation is inconsistent with two statutes, 15 U.S.C. § 1124 and 19 U.S.C. § 1526, which together prohibit the importation into the United States of goods bearing a trademark identical or confusingly similar to a mark owned by a United States citizen or corporation which is registered with the United States Patent and Trademark Office and recorded with the United States Custom Service, without the authorization or consent of the American trademark proprietor. Olympus accordingly requests that this Court enjoin the Customs Service from enforcing the

provisions of 19 C.F.R. § 133.21(c)(2) as to it.

Because of the controversy surrounding the current Customs' regulations, the Customs Service on May 21, 1984, published a notice soliciting economic data from the public concerning the effects of the importation of gray market goods. In addition, two actions seeking relief similar to that sought by Olympus were brought in other forums. First, in *Vivitar Corp. v. United States*, 585 F.Supp. 1419, and 593 F.Supp. 420 (C.I.T.1984), *aff'd*, 761 F.2d 1552 (1985), *rehearing denied*, No. 84–1638 (D.C.Cir. June 12, 1985), Vivitar sought a writ of mandamus in the Court of International Trade to compel Customs to revise 19 C.F.R. § 133.21. In addition, in *Coalition to Preserve the Integrity of American Trademarks v. United States*, 598 F.Supp. 844 (1984), (the so-called "COPIAT" case), an association of foreign manufacturers sought declaratory and injunctive relief halting the administration of 19 C.F.R. § 133.21. Recently, defendants in both cases have been granted summary judgment, and the *Vivitar* decision has been affirmed on appeal by the Court of Appeals for the Federal Circuit.

By Memorandum and Order dated November 15, 1984, the undersigned denied a motion by the federal defendants seeking dismissal of the complaint for lack of subject matter jurisdiction. That decision did not address a number of other motions filed by the parties and proposed intervenors. The matter, therefore, is now before the Court for consideration of the balance of motions: the motions of K-Mart and 47th Street Photo for leave to intervene, the motions of the federal defendants and proposed intervenors for dismissal or a stay due to plaintiff's alleged failure to exhaust administrative remedies and under the doctrine of primary jurisdiction, the motions of the federal defendants and proposed intervenors for a stay pending resolution of *Vivitar* and *COPIAT* and transfer of venue to the district of the District of Columbia, the motion of proposed intervenor 47th Street Photo for dismissal for failure to state a claim upon which relief can be granted, plaintiff's motion for summary judgment, and the cross-motions of the federal defendants and proposed intervenors for summary judgment.

## Motions for Intervention As of Right

■ Under Rule 24(a)(2), a proposed intervenor must show that (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject matter of the action, (3) the protection of the interest may, as a practical matter, be impaired by the disposition of the action, and (4) the interest is not adequately protected by an existing party. *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978). The parties do not dispute that proposed intervenors' applications are timely.

With respect to the second requirement, the Court of Appeals for this Circuit has recently noted:

"The term 'interest' in this context defies a simple definition. Before the 1966 amendment, Rule 24(a) allowed intervention as of right only where the applicant 'is or may be bound by a judgment in the action' or where the 'applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof.' Clearly, the 1966 amendment was intended to expand the right to intervene beyond those situations. However, as another court has aptly observed, 'the amendments made the question of what constitutes an "interest" more visible without contributing an answer.'

"In discussing 'interest in the context of intervention as of right,' the Supreme Court has stated that the interest must be 'significantly protectable.' Moreover, it is said that such an interest must be direct as opposed to remote or contingent.

"These definitions are, of course, imprecise, but it is difficult to be more than general in stating criteria designed to

cover the multitude of possible intervention situations."

*Restor-A-Dent Dental Lab v. Certified Alloy Products,* 725 F.2d 871 (2d Cir.1984) (citations omitted).

■ Applying these principles to the applications before me, I conclude that the interests of 47th Street Photo, but not those of K-Mart, rise to a level sufficient to require intervention as of right.

47th Street Photo has submitted affidavits which are essentially undisputed indicating that it purchases a substantial quantity of Olympus products from authorized distributors of Olympus merchandise abroad. According to these documents, if 47th Street Photo were forced to purchase the Olympus products that it sells solely from United States distributors, which would happen only if plaintiff prevailed in this action, it would be unable to continue selling Olympus products at discount prices. In addition, 47th Street Photo's access to other foreign-manufactured gray market products, which apparently are not available through the manufacturer's United States distributors, would be curtailed. Overall, 47th Street Photo's ability to do business would be substantially threatened. *See NYPIRG v. Regents,* 516 F.2d 350 (2d Cir.1975); *see also Planned Parenthood v. Citizens for Community Action,* 558 F.2d 861 (8th Cir.1977); *Atlantic Refining Co. v. Standard Oil Co.,* 304 F.2d 387 (D.C.Cir. 1962).

■ K-Mart, while a substantial purchaser of gray market goods, stands in a somewhat different position with respect to this case because it merely claims to be a "potential customer for imported Olympus gray market products." Its interest, therefore, is more remote and contingent. In one sense, K-Mart's position is analogous to that of the pharmacists in *NYPIRG, supra,* because K-Mart seeks to intervene in a suit challenging a regulation quite possibly inimical to its livelihood. *Compare Atlantic Refining, supra, and Natural Resources v. U.S. Nuclear Reg. Comm.,* 578 F.2d 1341 (10th Cir.1978) *with Wade v. Goldschmidt,* 673 F.2d 182 (7th

Cir.1982) *and Rosebud Coal Sales Co. v. Andrus,* 644 F.2d 849 (10th Cir.1981). However, I am persuaded by practical considerations recently discussed in *Restor-A-Dent, supra,* to deny K-Mart's motion to intervene as of right. Most importantly, to open the door to K-Mart's intervention as of right would do so to a class of persons or entities only remotely affected by the outcome of a challenge to a federal regulation and would preclude exercise of discretion in weighing the adverse effect of intervention on the prosecution of the plaintiff's cause of action. *Restor-A-Dent, supra* at 876; *see also United States ex rel. Carmona v. Ward,* 416 F.Supp. 276, 279 (S.D.N.Y. 1976). Accordingly, K-Mart's motion for intervention as of right is denied because the applicant claims too remote and contingent an interest in the property or transaction that is the subject matter of this action.

As to the third requirement, quite clearly, 47th Street Photo's ability to protect its interests will, as a practical matter, be impaired if 47th Street Photo is not permitted to intervene. Although apprehension concerning the force of *stare decisis* will not support intervention in all cases, *Oneida Indian Nation v. State of New York,* 732 F.2d 261 (2d Cir.1984), its effect under the circumstances presented here, presenting a significant case of apparent first impression, suffices to establish the third element of *Brennan. Natural Resources Defense Council, supra,* 578 F.2d at 1345, *see generally* Federal Rule of Civil Procedure 24(a); *NYPIRG, supra,* 516 F.2d at 350; *Spirit v. Teachers Ins. and Annuity Ass'n,* 93 F.R.D. 627, 643 (S.D.N.Y.1982).

Finally, as to the fourth element of the *Brennan* analysis, I conclude that 47th Street Photo has met its burden of establishing that the Government's representation may be inadequate because 47th Street Photo's interests, as well as its perspective and expertise, may differ significantly from those of the Government's. This burden is minimal, *Trbovich v. U.M.W.,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 643 n. 10 (1972); yet, the applicant must at least

overcome the presumption of adequate representation that arises when it has the same ultimate objective as a party to an existing suit, *Brennan, supra,* 579 F.2d at 191, especially if that party is the Government. *Environmental Defense Fund, Inc. v. Higginson,* 631 F.2d 738, 760 (D.C. Cir.1979). 47th Street Photo has stressed, and the United States does not contest, that it possesses experience and knowledge in a complex area of international trade and business which the Government does not have. *Natural Resources Defense Council, supra,* 578 F.2d 1341. In addition, 47th Street Photo may be expected to make a more vigorous presentation in favor of the regulation in question, given its significant economic interest in the regulation. *NYPIRG, supra.* Further, its private interest may differ somewhat from the more public interest oriented motives of the Government. *See Vivitar v. United States, supra.* 47th Street Photo has also pointed out that its legal arguments may differ from those of the Government. *See generally National Farm Lines v. ICC,* 564 F.2d 381 (10th Cir.1977).

Accordingly, 47th Street Photo's motion for intervention as of right is granted.

### K-Mart's Motion for Permissive Intervention

■ Under Rule 24(b), a district court may, in its discretion, permit intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." In exercising its discretion the district court must principally consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Additional considerations include the nature and extent of the intervenor's interests, whether its interests are adequately represented by the other parties, whether the applicant will benefit by intervention, and whether the applicant will significantly contribute to full development of the underlying factual

issues in the suit and to the just and equitable adjudication of the legal question presented. *Brennan, supra,* 579 F.2d at 192–93.

■ Having considered these factors in the context of the present case, I conclude that K-Mart's motion for permissive intervention should be granted. K-Mart's defenses and the instant action plainly concern a common question of law or fact, the validity of 19 C.F.R. § 133.21(c). In addition, since K-Mart has raised different legal arguments to support the regulation, its interest may not be adequately represented by 47th Street Photo and the Government and may contribute to more complete development of the record. Most importantly, the enormity of K-Mart's economic stake in the validity of the regulation in question,[1] though too contingent to justify intervention as of right, weighs heavily in favor of permissive intervention.

The foregoing determinations differ from those reached by the Court of International Trade in *Vivitar,* 585 F.Supp. 1415 (C.I.T. 1984), which, under virtually identical circumstances, denied K-Mart's application for permissive intervention.[2] Citing "the potential for a vast number of applications for intervention by persons in the position of K-Mart," *id.* at 1419, Judge Restani concluded that intervention would unduly delay or prejudice the adjudication of the rights of the original parties. My reasons for concluding to the contrary are twofold. First, to date, only two such parties have come forward in this action. In addition, the fact that two highly interested private parties, as well as the Government, are prepared to invest their time and resources to affirm the validity of 19 C.F.R. § 133.-21(c) may actually discourage others similarly situated from concluding that it is necessary to make such a commitment to the litigation themselves. Regardless, any future applications by other parties will be evaluated in the light of the current pos-

---

1. K-Mart alleges and the parties don't dispute that it purchases $250–300 million annually of gray market goods.

2. The court in *Vivitar* granted 47th Street Photo's motion for intervention as of right and denied K-Mart's application for similar relief.

ture of the case, and further intervention may well be inappropriate. Accordingly, K-Mart's motion for permissive intervention is granted.

### Motions for Dismissal or Stay

*Primary Jurisdiction.* In *United States v. Philadelphia National Bank,* 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963), the United States Supreme Court stated that the doctrine of primary jurisdiction

> "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.... Court jurisdiction is not thereby ousted, but only postponed."

In this Circuit primary jurisdiction is said to be based upon "a desire for uniformity of regulation and the need for an initial consideration by a body possessing special expertise in the issue presented." *Board of Education of City School District v. Harris,* 622 F.2d 599, 606 (2d Cir.1979). In determining whether to apply the doctrine, the courts have considered (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise, (2) whether the question at issue is peculiarly within the agency's discretion, (3) whether there exists substantial danger of inconsistent rulings, and (4) whether a prior application to the agency has been made. *RCA Global Communications, Inc. v. Western Union Telegraph Co.,* 521 F.Supp. 998, 1006 (S.D.N.Y.1981), *quoting Orange & Rockland Utilities, Inc. v. Howard Oil Co.,* 416 F.Supp. 460, 466 (S.D.N.Y.1976).

■ Applying these considerations to the instant case, I find it unnecessary and inappropriate to defer to the Treasury Department's factfinding expertise because the issue presented is strictly legal and within the expertise of the judiciary. *Board of Education of City School District, supra,*

622 F.2d at 607. Few, if any, technical or policy concerns of the agency are involved in this case; rather, the dispute is one of statutory construction and consideration of whether § 133.21(c) properly implements Section 526 of the Tariff Act and Section 42 of the Lanham Act as intended by Congress. *RCA Global Communications, Inc., supra* at 1006. Those few issues of fact that do emerge when considering the issue of gray market imports generally are tangential to the narrow focus of the dispute—the construction of § 526 of the Tariff Act by the Customs Service as set forth in § 133.21(c). Further, the record shows that resort to the agency is also unnecessary because of the Customs Service's and Treasury Department's long-standing and oft-expressed general policy. *See* Olympus Exhibit F.[3]

In sum, then, the issue is not peculiarly within the agency's discretion and has been before the agency for consideration formally and informally for several years. There is no compelling reason for this Court to defer its jurisdiction and postpone indefinitely consideration of the regulation at issue. I, therefore, decline to dismiss this case pursuant to the doctrine of primary jurisdiction.

■ *Exhaustion of Administrative Remedies.* Federal defendants and intervenor-defendants correctly note that exhaustion of prescribed administrative remedies must generally precede resort to the federal judiciary. *Myers v. Bethlehem Ship Building Co.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). The exhaustion doctrine is concerned with the timing of judicial review and provides that a court should resist premature intervention in a dispute. Judicial relief is premature when an agency has not had the opportunity to fully develop factual findings, apply its expertise to new issues, and to exercise its discretionary powers. *See McKart v. United States,* 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d

---

**3.** During a status conference on June 11, 1984, counsel for the United States, in response to a question from the Court, stated that "we don't contemplate for [sic] remand to the agency because the agency at this stage believes that its regulation is valid...." Tr. at p. 15.

194 (1969); *Touche Ross, infra,* 609 F.2d at 574. This broad rule, however, has been subject to substantial judicial clarification, and its application to any given case "requires an understanding of its purposes" and analysis of the unique circumstances of a particular dispute. *Touche Ross, infra* at 576 *quoting McKart v. United States, supra,* 395 U.S. at 193, 89 S.Ct. at 1662. Upon review of the case law in this area, I conclude that exhaustion is not required here.[4]

It is well recognized that several exceptions to the exhaustion doctrine exist, including, *inter alia,* the rule that the doctrine is inapplicable "when the issues presented to the court revolve around statutory interpretation." *Touche Ross & Co. v. SEC,* 609 F.2d 570, 576–77 (2d Cir.1979); *TIME D.C. Inc. v. Truck Employees of North Jersey Welfare Fund,* 560 F.Supp. 294, 302 (E.D.N.Y.1983). Here, the issue involved is strictly legal, involving neither the agency's particular expertise nor its factfinding powers. Particularly on point is this Circuit's ruling in *Touche Ross v. SEC, supra.* Plaintiff therein sought a declaratory judgment that SEC Rule 2(e) had been promulgated "without any statutory authority" and that plaintiff was being burdened by the agency acting "without authority of law." 609 F.2d at 573. Defendant, the SEC, moved to dismiss on the ground that plaintiff had failed to exhaust administrative remedies. The court set forth a list of situations in which exhaustion issues may arise, the third being pertinent to this case:

"... and (3) when, as in the particular circumstances of this case, Touche Ross requested this Court to adjudicate the question whether the Commission has the *authority* to promulgate Rule 2(3) and to proceed thereunder."

*Id.* at 574 (emphasis in original). Upon examination of the facts before it, the *Touche Ross* court concluded that agency expertise and discretion were unnecessary

because "the issue is one of purely statutory interpretation." *Id.* at 577.

The *Touche Ross* court held, in relevant part, that "because there is no need for further agency action to enable us to reach the merits ... appellants need not exhaust the administrative remedies." *Id.* at 574. The Court of Appeals has held exhaustion to be unnecessary in other cases where the underlying purposes of the doctrine as outlined by the Supreme Court in *McKart, supra,* 395 U.S. at 193–94, 89 S.Ct. at 1662–63, are satisfied. *E.g., Finnerty v. Cowen,* 508 F.2d 979 (2d Cir.1974); *Daipulse Corp. v. Food & Drug Administration,* 500 F.2d 75 (2d Cir.1974); *see also TIME D.C. Inc., supra.*

The instant case presents a situation virtually identical to that existing in *Touche Ross.* Plaintiff herein challenges the validity of an agency regulation, § 133.21(c), and the agency's statutory authority to issue it. Determination of that question is properly vested in the federal judiciary because there is no difficulty in obtaining and identifying the relevant facts through analysis of the legislative and administrative history.

Further, exhaustion of administrative remedies is unnecessary for other reasons. Exhaustion is unnecessary where administrative remedies would be futile. Here, the Treasury Department has already decided not to modify the regulation. *See* Olympus Exhibit F; *see Diapulse Corp., supra.* The fact that plaintiff may petition the agency for amendment or rescission of the regulation is not determinative. *See Consumers Union v. Miller,* 84 F.R.D. 240, 244 (D.D.C.1979). While the May 21, 1984 notice soliciting data regarding the economic effects of gray market imports remains outstanding, plaintiff should not be barred from judicial review of the legality of the regulation at issue since the legality of the regulation does not depend upon its economic impact.

---

4. I do not reach a conclusion as to whether plaintiff has formally exhausted all potential avenues of agency review. However, as noted earlier, it appears that plaintiff's position has long been before the agency for consideration, and the agency has chosen, for its own policy, administrative or political reasons, not to issue a conclusive determination.

Finally, defendant's reliance on *Seafarers International Union of North America, AFL–CIO v. United States Coast Guard*, 736 F.2d 19 (2d Cir.1984), is misplaced. The challenge in *Seafarers* was to agency inaction and failure to announce a rule, whereas plaintiff herein challenges as *ultra vires* a specific regulation being enforced. The issues in *Seafarers* were largely factual while the dispute in the present case is purely legal. Finally, in *Seafarers*, the defendant Coast Guard was concurrently involved in a reexamination of the regulations concerned and had instituted a comprehensive rulemaking. The Court, therefore, declined to "intervene in this ongoing administrative process on the basis of abstract and broad allegations...." *Id.* at 29. In contrast, the present case involves no such substantial ongoing agency proceedings and no comparable set of factual issues appropriate for initial consideration by the agency possessing particular expertise in such matters.

For all the foregoing reasons, federal defendants' and defendant-intervenors' motions to dismiss or stay this action on grounds of primary jurisdiction or failure to exhaust administrative remedies are denied.

*Motions for Stay or Transfer of Venue*

Because COPIAT and Vivitar have been decided during the pendency of these motions, the issues raised by defendants' motions for a stay or transfer of venue are moot.

*Motion to Dismiss for Failure to State a Claim*

Defendant-intervenor 47th Street Photo contends that plaintiff's complaint fails to state a claim under Section 42 of the Lanham Act, 15 U.S.C. § 1124, which provides in pertinent part that "no article of imported merchandise ... which shall copy of simulate a trademark registered in accordance with the provisions of this chapter ... shall be admitted to entry at any customhouse of the United States...." Plaintiff contends that this statute affords it protection against the importation by third parties of goods bearing authentic Olympus trademarks.

Section 42 of the Lanham Act is, with slight modifications, a re-enactment of Section 27 of the Trademark Act of 1905. 33 Stat. 724. It is agreed that up until *A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923), goods possessing a genuine foreign trademark could not infringe a domestic trademark. *E.g., Fred B. Gretsch Mfg. Co. v. Schoening*, 238 F. 780 (2d Cir.1916); *Hunyadi Janos Corp. v. Stoeger*, 285 F. 861 (2d Cir.1922). In *Katzel*, the Second Circuit held that an American purchaser, by arms-length transaction, of exclusive domestic trademark rights could not prevent the foreign seller of the trademark rights from continuing to sell to others the foreign made goods bearing a lawful French trademark which then came into the United States after the transfer of trademark contract, because the goods coming in were not counterfeit marks or spurious goods and, therefore, did not "copy or simulate."

While the *Katzel* decision was pending before the United States Supreme Court, Congress, after limited debate, enacted Section 526 of the Tariff Act, 19 U.S.C. § 1526. In 1923, the Supreme Court reversed the Second Circuit opinion in *Katzel* and held that the defendant could be enjoined from selling imported merchandise which was the authentic product of the French manufacturer and bore its trademark. This decision has been interpreted in two ways. One reading, urged herein by plaintiff, is that importation was prohibited under trademark law because such goods imported by anyone other than the American trademark registrant violated the holder's property right in that trademark. The other reading, asserted herein by defendants, concludes that the *Katzel* holding was premised largely on the equities of the facts in the case—specifically, the unfairness of permitting the foreign manufacturer, which had sold its trademark rights to another, to subsequently have its goods imported into the United States in direct

competition with the independent American purchaser of the trademark.

*A. Bourjois & Co. v. Aldridge*, 263 U.S. 675, 44 S.Ct. 4, 68 L.Ed. 501 (1923), presented the Supreme Court with a factual situation similar to that in *Katzel.* The Second Circuit certified two questions to the Supreme Court: "(1) Is the sale in the United States of Westheimer's Manon Lescaut powder an infringement of plaintiff's registered trademark? [and] (2) is the collector, by section 27 of the Trademark law, required to exclude from entry genuine Manon Lescaut powder so as aforesaid made in France?" *A. Bourjois & Co. v. Aldridge*, 293 F. 1013, 1014 (2nd Cir.1922). In its *per curiam* decision the Supreme Court responded: "The two questions certified by the Circuit Court of Appeals for the Second Circuit are answered in the affirmative, upon the authority of *Bourjois & Co. v. Katzel*, 260 U.S. 689, [43 S.Ct. 244, 67 L.Ed. 464] the defendant not objecting." *Id.* at 626, 44 S.Ct. at 4. *Aldridge*, while directly applying Section 27, the predecessor to Section 42 of the Lanham Act, is, therefore, also subject to two interpretations based upon the aforementioned alternative readings of *Katzel.*

The District Court for the District of Columbia, by Judge Johnson, concluded in *COPIAT* that *Katzel* and *Aldridge* were narrow holdings tied to the particular facts of those cases. Having made that finding, Judge Johnson held that, absent the *Katzel* facts, Section 42 of the Lanham Act must be read to apply only to merchandise bearing counterfeit or spurious trademarks that truly "copy or simulate" genuine trademarks. The Court of International Trade, by Judge Restani, did not address Section 42 of the Lanham Act in *Vivitar,* having decided in an earlier opinion that it lacked subject matter jurisdiction to do so. *Vivitar, supra.* However, in concluding that Section 526(a) of the Tariff Act could reasonably be read to authorize Customs Service regulation 133.21(c), Judge Restani also apparently read *Katzel* and *Aldridge* in the narrow manner urged herein by defendants. In *Osawa & Co. v. B & H Photo*, 589 F.Supp. 1163 (S.D.N.Y.1984), Judge

Leval construed *Katzel* and *Aldridge* broadly and concluded that Section 42 of the Lanham Act does govern genuine foreign merchandise imported into the United States. *See also Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 548 F.Supp. 1063 (E.D.N.Y.1982) (Neaher, J.), *rev'd and remanded on other grounds*, 719 F.2d 42 (2d Cir.1983). Finally, the United States International Trade Commission ("ITC") in *In re Certain Alkaline Batteries (Duracell)*, No. 337–TA–165 (I.T.C. Nov. 1984), also construed Section 42 to exclude genuine goods that bear a foreign trademark from entry into the United States if that trademark copies or simulates the American trademark holder's mark. The 3–2 decision of the ITC was disapproved by President Reagan on January 4, 1985.

As is clear, judicial interpretation of the scope of *Katzel, Aldridge* and Section 42 is split. It appears to this Court that *Katzel* held that the independent owner of the registered trademark had the right to enjoin anyone else from selling the same product under that mark in the United States. In *Katzel*, the Supreme Court emphasized the equities, citing no statute or precedent. Justice Holmes wrote that it would be "most unfair" to permit the French trademark seller to arrange to have its goods marketed in the United States by someone other than the American owner "for the purpose of evading the effect of the transfer." 260 U.S. at 691, 43 S.Ct. at 245. Such a "contrivance," he said, "must fail." *Id.* For the same equitable reasons, Justice Holmes said that buyers from the French producer, even if not engaged in any conspiracy, were prohibited from violating the trademark rights that had been purchased by an American concern that had invested substantial sums in developing its own independent public image.

■ This language makes clear, when read in conjunction with Section 42 of the Lanham Act, that a determination as to whether genuine foreign merchandise infringes a domestic trademark holder's mark cannot be made at the customhouse

at the time of importation. If Section 42 regarding goods that "copy or simulate" a domestic trademark were interpreted to apply to genuine foreign merchandise such as that at issue in this case, Customs' officials would be placed in the position of having to determine at the time of border crossing whether the domestic trademark holder had developed an independent public image in this country. Customs' officials, in effect, would be given the power to determine infringement at the border, before the issue of domestic good will was clarified. That determination of copying and confusion is appropriately resolved through litigation in the courts where a full factual record can be developed. Accordingly, I conclude that plaintiff's Section 42 cause of action fails to state a claim for relief and must be dismissed.

### Cross-Motions for Summary Judgment

As a preliminary matter, it is necessary to address defendant-intervenors' assertion that material factual issues exist requiring trial which preclude plaintiff from obtaining summary judgment. Such claimed factual disputes include plaintiff's alleged injuries, plaintiff's allegations that gray market imports are "free-riding" on its good will established through an expensive commitment to the Olympus-brand by national advertising, warranty and service programs, and the extent to which Olympus-brand goods are imported without authorization and sold at a significantly lower wholesale price. These arguments, however, are unpersuasive in the context of the instant action for declaratory and injunctive relief. The allegedly disputed facts simply are not material issues relevant to this action under § 526 to invalidate Customs Service regulation § 133.21(c).

Of course, even the legal issue as to the proper construction of § 526 and the reasonableness of regulation § 133.21(c) requires identification and organization of the facts concerning the legislative and judicial history of § 526 and the administrative history regarding the promulgation and application of § 133.21(c). Such inquiry is, however, part of the determination of the law, not a matter of factual dispute. Accordingly, the parties to this action, including intervenors, have briefed in exhaustive detail the history of the statute and regulation in controversy. Although the parties have drawn different conclusions as to the significance or meaning of various legislative, judicial, and agency actions, none of the parties has challenged the basic historical chronology and the factual background of the statute and regulation at issue. Because this is so, the dispute is ripe for judicial interpretation and summary disposition.

■ The issue for determination, then, is whether § 113.21(c) is inconsistent with § 526 of the Tariff Act and, therefore, *ultra vires*. Plaintiff asserts that § 526 on its face permits Olympus to exclude all merchandise bearing the Olympus trademark but distributed by anyone other than the domestic mark holder. Plaintiff contends that § 133.21(c) effectively nullifies the protection that it claims Congress intended § 526 to provide United States trademark owners, as supported by the legislative and administrative history of the statute. Defendants contend that the broad language of § 526 cannot be applied without consideration of the intended purpose of the statute. Resorting to the same legislative history cited by plaintiff, defendants conclude the Congress enacted § 526 as a special, limited remedy aimed at protecting American businesses from perceived unfair competition occurring in *Katzel*-type factual circumstances. Further, defendants argue that the administrative practice and congressional action or inaction subsequent to enactment of § 526 support their narrower construction of the statute.

Section 526 read literally would indeed give plaintiff the right to exclude all goods bearing the Olympus trademark. However, as Judge Patricia Wald of the District of Columbia Court of Appeals has observed while discussing the Supreme Court's canons of statutory construction:

"[A]lthough the Court still refers to the 'plain meaning' rule, the rule has effectively been laid to rest. No occasion for statutory construction now exists when the Court will not look at the legislative history...."

Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term,* 68 Iowa L.Rev. 195 (1983). It is clear, then, that the Court may examine "the circumstances surrounding enactment" of § 526 including "the evil which it was designed to remedy ... contemporaneous events, [and] the situation ... as it was pressed upon the attention of the legislative body." *Church of the Holy Trinity v. U.S.,* 143 U.S. 457, 459, 463, 12 S.Ct. 511, 512–513, 36 L.Ed. 226. No theory of judicial review requires the Court to ignore available facts that may aid it in establishing legislative intent. *Zenith Radio Corporation v. United States,* 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978). Furthermore, in construing § 526, the administrative interpretation of the Customs Service charged with administering the statute is entitled to substantial deference. *Id.* at 450, 98 S.Ct. at 2445.

Having undertaken such review of the legislative history of and administrative practice with respect to § 526, I conclude that the statute was enacted in response to the Second Circuit's *Katzel* decision and had a limited purpose. The broad interpretation that plaintiff urges upon the Court is contrary to the reading that is supported by the legislative history, longstanding administrative practice by the Customs Service, relevant judicial decisions, and legislative inaction or acquiescence of all of the above during the decades following enactment of § 526. Because the legislative history has been thoroughly set forth in Judge Restani's opinion in *Vivitar,* there is no need to reiterate it herein. Further, Judge Restani and Judge Johnson in *Vivitar* and *COPIAT,* respectively, have exhaustively discussed the administrative

practice of the Customs Service and congressional ratification thereof, again obviating the need for a similar recitation of that history by this Court. The Federal Circuit, however, in affirming *Vivitar* has stated its majority opinion in lengthy dicta,[5] that § 526 is of broader scope than the regulation. The majority concluded that § 526 should not be given the limited construction urged by defendants herein. In reaching that conclusion, the majority rejected the same arguments presented by defendants herein in favor of a limited construction based upon the legislative history, administrative interpretation, and implied congressional ratification of § 526. Although the Federal Circuit's opinion is thorough and thoughtful, its conclusion as to the scope of the statute is less persuasive to this Court than that reached in *Vivitar* and *COPIAT.*

Accordingly, the motions of K-Mart and 47th Street Photo for leave to intervene are granted; the motions of the federal defendants and defendant-intervenors for dismissal based on the doctrines of primary jurisdiction or exhaustion and for stay or transfer of venue are denied; the motions of 47th Street Photo for dismissal of the Section 42 claim is granted; plaintiff's motion for summary judgment is denied; and the cross-motions of all defendants for summary judgment on the § 526 claim are granted.

The clerk is directed to enter judgment dismissing the complaint and to mail a copy of the within to all parties.

SO ORDERED.

---

5. As Judge Davis stated in his concurring opinion criticizing the majority's "wholly inappropriate ... dicta" in *Vivitar:*

"All that we hold in this case is that the Customs regulation is now valid as a Customs enforcement regulation."
761 F.2d at 1572.